DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
William H. Schrag, Esq.
*wheuer@duanemorris.com*
*wschrag@duanemorris.com*

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | Case No. 10-[__] |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF**

Maru E. Johansen, in her capacity as the foreign representative (the "Foreign Representative") of the above-captioned debtor ("Mexicana"), whose voluntary corporate reorganization proceedings under the laws of Mexico currently are pending before the District Court for Civil Matters for The Federal District, Mexico (the "Mexican Court" and "Concurso Proceeding"), respectfully submits this verified petition (the "Petition") (i) for recognition by this Court as Mexicana's "foreign representative" as defined in section 101(24) of the title 11, United States Code §§ 101 *et seq.* (the "Bankruptcy Code") and (ii) for recognition of the Concurso Proceeding as a "foreign main proceeding" pursuant to Bankruptcy Code sections 1515, 1517 and 1520.

In support of the Petition, the Foreign Representative has filed contemporaneously herewith her Declaration as Foreign Representative (the "Foreign Representative Declaration"), which is incorporated herein by reference. In addition, the Foreign Representative also has filed

contemporaneously herewith the (i) Declaration of Jaime Rene Guerra Gonzalez, Mexican counsel to Mexicana (the "Guerra Gonzalez Declaration"); and (ii) Affidavit of William C. Heuer in Support of the Foreign Representative's Ex Parte Application for an Order Granting (a) Provisional Relief and Injunction and (b) Scheduling Hearing (the "Heuer Affidavit"), both of which, too, are incorporated herein by reference.

**Preliminary Statement**

1. Compania Mexicana de Aviacion, S.A. de C.V. ("Mexicana") and its affiliates operate Mexicana Airlines, Mexico's largest airline. Mexicana and its affiliates carry passengers and cargo to destinations worldwide.

2. To effectuate a restructuring of its business and financial affairs, on August 2, 2010 (prevailing Mexico time) Mexicana voluntarily filed a petition for commencement of a corporate reorganization proceeding in the Mexican Court under Mexico's *Ley de Concursos Mercantiles* (the "Concurso Law"). In connection with commencement of the Concurso Proceeding, Mexicana's Board of Directors appointed the Foreign Representative and specifically authorized the Foreign Representative to seek relief in this Court under Chapter 15 of the Bankruptcy Code.

3. As is set forth in the Guerra Gonzalez Declaration, following filing of the petition commencing the Concurso Proceeding, an examination of Mexicana's books and records will be conducted by a Court-appointed individual and the Mexican Court will issue a "business reorganization judgment," determining whether the Concurso petition will be granted. If the Concurso petition is granted, a stay of seizures, foreclosures and execution of judgments will be put in place, and Mexicana will begin the process of reorganization. Additional relief in the nature of provisional injunctions is available, and will be sought by Mexicana.

4. In the Concurso Proceeding, Mexicana intends to proceed with a reorganization and obtain approval of the relevant and required number of affected creditors, and confirmation

by the Mexican Court, of a debt restructuring plan in accordance with the Concurso Law (which is more fully described below). Under the Concurso Law, Mexicana has authority to pay and honor outstanding obligations to Mexicana's customers, vendors, employees and business partners during the pendency of the Concurso Proceeding.

5. The restructuring contemplated to be undertaken in the Concurso Proceeding will achieve a significant restructuring of Mexicana's business. Mexicana anticipates that it will emerge from this restructuring process a stronger, more competitive company and airline, and believes that the benefits to be gained from the restructuring process will enable Mexicana to remain a premier global air carrier.

6. However, pending development and approval of a restructuring plan by the Mexican Court, Mexicana requires the protection afforded to foreign debtors pursuant to Chapter 15 of the Bankruptcy Code in order to protect its valuable assets in the United States. For example, Mexicana has interests in certain real estate at: (i) John F. Kennedy International Airport in New York, New York; (ii) O'Hare International Airport in Chicago, Illinois; (iii) Dallas Fort Worth Airport in Dallas, Texas; (iv) Denver International Airport in Denver, Colorado; (v) Fresno Yosemite International Airport in Fresno, California; (vi) McCarran International Airport in Las Vegas, Nevada; (vii) Miami International Airport in Miami, Florida; (viii) Oakland International Airport in Oakland, California; (ix) Orlando International Airport in Orlando, Florida; (x) Sacramento International Airport in Sacramento, California; (xi) San Antonio Airport in San Antonio, California; (xii) San Francisco International Airport in San Francisco, California; (xiii) San Jose Airport in San Jose, California; (xiv) Washington Dulles Airport in Dulles, Virginia; and (xv) at Los Angeles International Airport in Los Angeles, California. Mexicana has valuable "slots" for its aircraft at those locations. Mexicana also has approximately 147 employees, multiple aircraft at multiple airports, and aircraft-related

component parts, in the United States, at any point in time. Mexicana also has interests in certain bank and collateral accounts located in the United States.

7. Mexicana seeks the protections of Chapter 15 to ensure consistent and smooth operations without disruption while the Concurso Proceeding moves forward. Protection of Mexicana's United States-based assets and ensuring that there are no operational disruptions in the United States, will help ensure that Mexicana's restructuring in the Concurso Proceeding proceeds quickly. Thus, by way of separate motion, Mexicana has sought a temporary restraining order and preliminary injunctive relief pending a hearing on recognition.

8. To better facilitate an efficient corporate restructuring in the Concurso Proceeding, pursuant to this Petition, the Foreign Representative seeks recognition (i) as Mexicana's "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and (ii) of the Concurso Proceedings as a "foreign main proceeding," within the meaning of section 101(23) of the Bankruptcy Code.

### Jurisdiction

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

10. This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Concurso Proceeding in accordance with section 1515 of the Bankruptcy Code by Mexicana's duly appointed foreign representative.

11. Mexicana has assets and accounts located in this District, and venue is thus proper pursuant to 28 U.S.C. § 1410(3).

12. The statutory bases for relief are sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## Background

### I. Mexicana's Business

13. Mexicana was founded 89 years ago. It is the airline with the fourth longest tradition of service in the world.

14. When Mexicana was founded in Mexico City on July 12, 1921, it was named Compañía Mexicana de Transportación Aérea ("CMTA"). CMTA began operations with just four open-cockpit planes that were each able to transport just one passenger and 50 kilograms of baggage and mail. CMTA's services expanded over time with increased flights and mail delivery, and added aerial photography. With this growth, CMTA increased the size of its fleet. In 1924, CMTA became Mexicana Airlines.

15. In 1928, Mexicana expanded the range of its operations to include the Mexican southeast, which for centuries had been isolated. Then, in 1929, all of the shares in Mexicana were sold to Pan American Airways. The union of both companies provided good opportunity for the continued growth, and internationalization, of Mexicana and its operations.

16. Shortly thereafter, in March 1929, Mexicana opened the international Mexico-Tuxpan-Tampico-Brownsville Texas route, with the first of five three-engine planes to be acquired by Mexicana. With these aircraft, significant passenger services were introduced, since the aircraft had capacity for one flight attendant and 13 passengers. Charles A. Lindbergh piloted the first trip for Mexicana between Brownsville, Texas and Mexico City.

17. Today, Mexicana is the airline with the most extensive international coverage from Mexico and the leading transportation company between Mexico and the United States. From its operations hub in Mexico City International Airport, Mexicana flies to destinations in North, Central and South America, Europe, and the Caribbean. Mexicana has on numerous

occasions been recognized with World Travel Awards as the best business class airline in Mexico and Latin America, in addition to numerous awards as the overall leading airline in the same region.

## II. Mexicana's Debt Obligations

18. Mexicana is an obligor under the terms of a Credit Agreement with Banco Mercantil del Norte, S.A. ("Banco Mercantil"), dated as of April 17, 2008 (the "Credit Agreement"), pursuant to which Mexicana and affiliated non-debtor companies have approximately $1,572,420,000 (Mexican Pesos) of indebtedness.[1] The Credit Agreement is the primary financing vehicle on which Mexicana has relied in the past. No notices of default have been issued to Mexicana or any other obligor pursuant to the terms of the Credit Agreement,[2] and, in advance of commencement of the Concurso Proceeding, Mexicana began discussions with Banco Mercantil regarding Mexicana's financial situation and restructuring, as well as its aircraft lessors.

19. The Credit Agreement is collateralized through the grant of a security interest to Banco Mercantil. That security interest includes deposit accounts in Mexicana's name at Inter National Bank (the "Collateral Accounts"), which acts as collateral agent (the "Collateral Agent") for the benefit of Banco Mercantil with respect to repayment of all obligations under the Credit Agreement. The security interest, and the role of the Collateral Agent, are detailed in a Deposit Account Security Agreement dated as of June 16, 2008.

20. The Collateral Accounts are where Mexicana's U.S.-based credit card and other payments are sent. The Deposit Account Security Agreement specifically provides that unless an event of default has occurred under the terms of the Credit Agreement, the Collateral Agent must

---

[1] Applying an exchange rate of 0.0786052, the indebtedness is approximately $123,600,433 (USD).

[2] Mexicana's co-obligor affiliates are not the subject of any reorganization proceedings.

6

transfer amounts deposited in the Collateral Account to accounts designated by Mexicana (and other obligors). The funds collected in the Collateral Account presently flow to Mexicana and are an important source of revenue for funding Mexicana's operating expenses.

**III.   Equity**

21. Mexicana is owned (99.81%) by Nuevo Grupo Aeronautico, S.A. de C.V. ("Grupo Nuevo"), which is a privately-owned company, and by Aeropuertos y Terrenos, S.A. de C.V. (0.16%).

**Commencement of the Concurso Proceeding**

22. Over the course of the past few years, Mexicana, like many other entities in a variety of industries throughout the world, has faced significant challenges. The worldwide recession that has taken hold over the past three years has created an environment of economic distress for companies and individuals alike, and that environment has impacted Mexicana's operations. In addition, Mexicana's operations have been impacted over the past few years by an unprecedented, unexpected and sustained rise in global energy prices. Indeed, the rising price of energy (in particular, jet fuel) has resulted in a rapid and very significant escalation in Mexicana's operational costs. Finally, in 2009, many businesses in Mexico, including Mexicana, suffered losses as a result of a flu epidemic that had a severe, immediate and unexpected impact upon Mexican tourism and business-related trips and travel.

23. As a result of the foregoing, Mexicana faces financial and operational hurdles that made it prudent for Mexicana to seek relief under the Concurso Law in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

24. On July 30, 2010, the Board of Directors of Mexicana authorized the commencement of the Concurso Proceeding, and also authorized the commencement of this Chapter 15 proceeding (the "Board Resolution"). Mexicana also empowered Maru E. Johansen

7
DM2\2410939.1

to act as Mexicana's Foreign Representative, and empowered her to commence this Chapter 15 proceeding.

25. On August 2, 2010, Mexicana initiated the Concurso Proceeding pursuant to the provisions of the Mexican Business Reorganization Act by submitting a voluntary petition to the Mexico Court.

**Relief Requested**

26. For the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) recognizing the Concurso Proceeding as "a foreign main proceeding" pursuant to 11 U.S.C. §§ 1517(a) and (b)(1) and providing the protections and benefits identified in Bankruptcy Code Section 1521; (ii) recognizing the Foreign Representative as the duly appointed "foreign representative," as defined in 11 U.S.C. § 101(24), of Mexicana; and (iii) to the extent necessary (*i.e.*, if the Concurso Proceeding is found to be a foreign "nonmain" proceeding rather than a foreign "main" proceeding), granting relief under sections 1521(a)(1), (2), (3), (5) and (6) and 1521(b) of the Bankruptcy Code.

**Grounds For Relief Requested**

27. Chapter 15 of the Bankruptcy Code is designed to assist foreign representatives to protect assets located in the United States that belong to a foreign debtor that has commenced insolvency proceedings in a foreign jurisdiction. *See* 11 U.S.C. § 1501(b). Among the purposes of Chapter 15 are: (i) to encourage cooperation between U.S. and foreign courts; (ii) to promote the fair and efficient administration of cross-border insolvencies that protect creditors, debtors, and other parties-in-interest; and (iii) to protect and maximize the value of the debtor's assets. Consistent with those principles, the Foreign Representative commenced this Chapter 15 proceeding to obtain recognition of the Concurso Proceeding as a foreign "main" proceeding. The Foreign Representative believes that this Chapter 15 proceeding will complement

8

Mexicana's primary proceedings in Mexico to ensure the effective and economic administration of Mexicana's restructuring efforts.

### IV. The Requirements For Recognition As A Foreign Main Proceeding Are Satisfied

28. Section 1517(a) of the Bankruptcy Code provides that a court shall enter an order granting recognition of a foreign proceeding if:

> (i) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii) the foreign representative applying for recognition is a person or body; and
>
> (iii) the Petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b), in turn, provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Foreign Representative submits that all of the requirements for recognition of a foreign main proceeding are satisfied.

### iv. *The Concurso Proceeding is a "Foreign Proceeding"*

29. As a threshold matter, the Concurso Proceeding is a "foreign proceeding" as that term is defined in the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

30. The Concurso Proceeding meets this definition because it is a collective administrative proceeding under the Concurso Law, administered in the Mexican Court, which relates to insolvency and adjustment of debt. The purpose of the Concurso Proceeding is to

9

allow financially troubled businesses time to either craft and execute a plan of reorganization or go through an orderly liquidation of their assets. The process is controlled by the Mexico Court, which has authority at the outset to grant or deny the Concurso petition and has review and approval rights over any plan of reorganization filed by the debtor.[3]

31. Under the Concurso Law, though Mexicana will remain in control of its business and operations, the process of forming the plan of reorganization is overseen by a court appointed administrator, the *Conciliador*, who exercises powers similar to those of the United States Trustee in a proceeding under the Bankruptcy Code. Moreover, because Mexicana operates under a concession of title from the Mexican government as a "Public Service," the Mexican Ministry of Transportation and Communications will participate. For these reasons, Mexicana's assets are and will continue to be "subject to control or supervision by a foreign court" through the Concurso Proceeding, and all of the requirements of section 101(23) are met. Indeed, the Bankruptcy Court for the Southern District of New York has previously recognized proceedings under the Concurso Law as foreign proceedings under Chapter 15 of the Bankruptcy Code. *See In re Corporacion Durango, S.A.B. de C.V.*, No. 08-13911 (RDD) (Bankr. S.D.N.Y. Dec. 11, 2008) (Mexican Concurso proceeding recognized as a foreign proceeding).

        v.       *The Concurso Proceeding Qualifies as a Foreign "Main" Proceeding*

32. Once it is determined that the Concurso Proceeding is a foreign proceeding, the question becomes whether the foreign proceeding is entitled to recognition, and if so, whether as a foreign "main" or "nonmain" proceeding. Section 1502(5) defines a foreign "nonmain" proceeding as one which is pending in a country where the debtor has an "establishment," which in turn is defined in Section 1502(2) as "any place of operations where the debtor carries out a

---

[3] The Chapter 15 Petition in this case was filed concurrently with the filing of the Concurso petition. Once the Mexico Court grants the Concurso petition, Mexicana will file appropriate notices and will inform the Court as required pursuant to 11 U.S.C. §1518.

nontransitory economic activity." Section 1502(4), in turn, defines a foreign "main" proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Thus, it must be shown that the Concurso Proceeding is located in the center of Mexicana's main interests in order for the Concurso Proceeding to be considered a foreign "main" proceeding.

33. Although the Bankruptcy Code does not provide a conclusive test to determine what constitutes a debtor's center of main interests, pursuant to section 1516 of the Bankruptcy Code it is presumed, absent evidence to the contrary, that the debtor's center of main interests is located where the debtor has its registered office. 11 U.S.C. § 1516(c). The concept of center of main interests has been equated by courts to the concept of a debtor's "principal place of business." *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

34. There is no doubt that Mexico is Mexicana's "center of main interests." Mexicana is headquartered in Mexico. The vast majority of Mexicana's assets are located in Mexico and many of its employees are located in Mexico. Mexicana's worldwide flight hub is in Mexico City. Mexicana's registered office is located in Mexico, and therefore it is presumed that Mexicana's center of main interests is in Mexico. Moreover, since Mexicana operates under a concession of title from the Mexican government and it is thus a "Public Service" under Mexican law, the Mexican Ministry of Transportation and Communications will be involved in the Concurso Proceeding and reorganization process. As the Concurso Proceeding is a foreign proceeding located where Mexicana's "center of main interests" are located, it is therefore a "foreign main proceeding" under the Bankruptcy Code.[4]

---

[4] In *Corporacion Durango*, too, the Court found the Concurso proceeding to be a "main" proceeding.

### vi. *The Foreign Representative Meets the Statutory Requirements*

35. The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative applying for recognition be a person or body." *See* 11 U.S.C. § 1517(a)(2).

36. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

37. Courts in this district have on numerous occasions held that a foreign representative may be appointed by a debtor's board of directors, and need not be appointed by the foreign court overseeing the foreign proceeding.[5] *See, e.g., In re Bd. Of Dirs. of Hopewell*, 275 B.R. 699, 707 (S.D.N.Y. 2002) (holding that company's board of directors qualified as foreign representative); *see also In re Bd. of Dirs. Of Telecom Argentina S.A.,* No. 05-17811 (BRL), 2006 WL 686867 at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) (same); *In re Netia Holdings*, 277 B.R. 571, 587 n. 76 (Bankr. S.D.N.Y. 2002) (same). Indeed, neither section 101(24) nor Chapter 15 of the Bankruptcy Code requires foreign representatives to be appointed by foreign courts. *See In re Hopewell*, 275 BR. 699, 707 (S.D.N.Y. 2002) (interpreting prior version of section 101(24) of the Bankruptcy Code and stressing that "nothing in the statute requires a court

---

[5] The definition of "foreign representative" was amended in 2005 as follows (italicized text representing additions, and stricken text representing deletions):

> *The term* "foreign representative" means ~~duly selected trustee, administrator, or other representative of an estate in a foreign proceeding~~ *a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*

*See* Lawrence P. King, 2 COLLIER ON BANKRUPTCY ¶ 101.24 (15th ed. revised 2009).

appointment"). Although there is little authority interpreting the current version of section 101(24), nothing in the plain text of the statute requires that a foreign representative be appointed by court order. Rather, section 101(24) simply requires that a foreign representative be "authorized" to administer the reorganization or the liquidation of the debtor's assets or affairs or act as a representative of the foreign proceeding. *See* 11 U.S.C. § 101(24).

38. Consistent with this reasoning, in *In re Corporacion Durango, S.A.B. de C.V.,* this Court recognized, in a case involving a proceeding in Mexico under the Concurso Law, an officer of the debtor as a duly authorized foreign representative of the debtor within the meaning of sections 101(24) and 1515(a)(2) of the Bankruptcy Code. The foreign representative in *Corporacion Durango* was not appointed by the Mexican court, but was instead appointed by the debtor's board of directors prior to the filing of its Concurso proceeding. *See In re Corporacion Durango, S.A.B. de C.V.,* No. 08-13911 (RDD) (Bankr. S.D.N.Y. Dec. 11, 2008).

39. Maru E. Johansen is an individual that has been duly appointed by Mexicana's Board of Directors. The requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code have been met. Accordingly, Ms. Johansen should be recognized by the Court as Mexicana's Foreign Representative.

### vii. *The Requirements of Bankruptcy Code Section 1515 Have Been Met*

40. The final requirement for recognition of a foreign main proceeding is compliance with the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code. Section 1515 (i) requires that a petition be filed with the court and (ii) lists the documents and statements that must accompany the petition for recognition. *See* 11 U.S.C. § 1515. All of the requirements of section 1515 of the Bankruptcy Code have been met.

41. First, the Chapter 15 Petition in this case was properly filed by the Foreign Representative on behalf of Mexicana, as required by section 1515(a) of the Bankruptcy Code.

42. Second, documents evidencing: (i) the appointment of the Petitioner as foreign representative and (ii) the commencement and existence of the Concurso Proceeding, in the form of the Board Resolution and Concurso petition, have been provided as Exhibits A and C, respectively, to the Foreign Representative Declaration, as required under section 1515(b). English translations of the Resolution and Concurso petition, as required by section 1515(d) of the Bankruptcy Code, are attached as Exhibits B and D to the Foreign Representative Declaration, respectively.

43. Finally, as is required by to section 1515(c), the Foreign Representative Declaration includes a statement identifying the Concurso Proceeding as the only foreign proceeding currently pending with respect to Mexicana. *See* Foreign Representative Declaration.

## Recognition As Foreign Nonmain Proceeding

44. In the event the Court finds that the Concurso is not entitled to foreign main proceeding status, Mexicana respectfully requests that foreign nonmain status be granted. Mexicana respectfully submits that based upon the evidence submitted by way of the Foreign Representative's Declaration, Mexicana has ably demonstrated that it has a nontransitory economic presence in Mexico. *See* 11 U.S.C. §§ 1502; 1517.

45. To the extent the Court grants foreign nonmain status, Mexicana respectfully requests that the Court grant Mexicana the same relief, and to the same extent, sought by Mexicana on an interim basis in this Chapter 15 proceeding.

**Conclusion**

Based upon the foregoing, the Foreign Representative respectfully requests that the Court enter an order, if the Form annexed hereto as **Exhibit A,** finding that: (i) the Foreign Representative meets the statutory requirements of 11 U.S.C. §§ 101(24) and 1517(a)(2); and (ii) that the Concurso Proceeding qualifies as a foreign main proceeding under the statutory requirements of 11 U.S.C. §§ 101(23), 1502(4) and 1516(c), and grant such other and further relief as is necessary and appropriate.

Dated: New York, New York
       August 2, 2010

**DUANE MORRIS LLP**

  */s/William C. Heuer*
William C. Heuer, Esq.
William H. Schrag, Esq.
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
*wheuer@duanemorris.com*
*wschrag@duanemorris.com*

*Counsel to the Foreign Representative*

DM2\2410939.1