DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
William H. Schrag, Esq.
*wheuer@duanemorris.com*
*wschrag@duanemorris.com*

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | ) ) ) | Case No. 10-[__] |
| Debtor in a Foreign Proceeding. | ) ) | |

### DECLARATION OF MARU E. JOHANSEN
### PURSUANT TO 28 U.S.C. § 1746

I, Maru E. Johansen, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I hereby submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief (the "Petition") which seeks entry of an order (i) recognizing the voluntary judicial reorganization proceeding (the "Concurso Proceeding") that was initiated by Compania Mexicana de Aviacion, S.A. de C.V. ("Mexicana") in the District Court for Civil Matters for The Federal District, Mexico (the "Mexico Court"), on August 2, 2010, as a foreign "main" proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and (ii) granting related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code. This Declaration is also submitted in support of Mexicana's Ex Parte Request

for Provisional and Interim Relief pursuant to section 1519 of the Bankruptcy Code. Except as is set forth below, I have personal knowledge of the matters set forth in this Declaration.[1]

## Discussion

2. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

3. I am an officer holding the title of Vice President of Legal and Corporate Affairs for the United States, Canada and United Kingdom, of Mexicana. My office is located in Los Angeles, California. Through my position at Mexicana, I am familiar with Mexicana's operations both in the United States and abroad, as well as the financial condition of Mexicana. I am familiar with Mexicana's financing agreements with its lenders, and the mechanisms through which payments are made on those financing agreements. I have been an employee of Mexicana for twenty-seven (27) years.

4. On July 30, 2010, the Board of Directors of Mexicana authorized the commencement of a proceeding under Chapter 15 of the Bankruptcy Code. Mexicana's Board of Directors also selected me to serve as the foreign representative of Mexicana and its estate in connection with any Chapter 15 proceeding commenced in the United States Bankruptcy Courts. In order to carry out my duties, I have been granted a Power of Attorney by Mexicana's Board of Directors which authorizes me to, among other things, initiate legal proceedings in the United States on behalf of Mexicana, including this Chapter 15 proceeding. True and correct copies of the Board Resolution, which includes the Power of Attorney granted to me by Mexicana, and the English translation thereof, are annexed hereto as Exhibits "A" and "B", respectively.[2]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Petition.

[2] I have caused a translator to translate each of the documents appended hereto. I have reviewed the English-translated documents and state that they are accurate.

5. On August 2, 2010, Mexicana initiated the Concurso Proceeding pursuant to the provisions of the *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act" or "Concurso Law") by submitting its voluntary petition to commence a case under the Mexican Business Reorganization Act (the "Concurso petition") to the Mexico Court. True and correct copies of the Concurso petition filed with the Mexico Court, and the English translation thereof, are annexed hereto as Exhibits "C" and "D", respectively.

6. Pursuant to the authority granted to me by Mexicana's Board of Directors, I have caused this Chapter 15 proceeding to be commenced through the filing of the Petition.

**I. Mexicana's Operations**

7. Mexicana presently employs thousands of individuals to administer and operate Mexicana's business and operations facilities located in the United States and Mexico.

8. Mexicana is headquartered in Mexico City, Mexico. Mexicana employs many people in Mexico, and has office and administrative space in Mexico. Mexicana's registered office is located in Mexico. Its international flight hub is in Mexico City. Mexicana's counsel in Mexico has advised me that Mexicana operates under a "concession of title" from the Mexican government, and thus is a "Public Service" within the meaning of Mexican law.

9. Mexicana is the oldest commercial airline in North America. Mexicana has been providing air transportation services between the United States and Mexico for over 75 years, substantially contributing to commerce and tourism and business-related trips and travel for both countries. In 2009, Mexicana operated over seventeen thousand flights from/to the United States and Mexico. Several U.S. airports acquired their international designation, and as a direct result generated jobs for Immigration and Customs personnel at those airports, because of Mexicana's flights and operations.

10. Currently, Mexicana conducts business in fifteen cities in the United States. My office is located in Los Angeles, California, where Mexicana also has flight operations. Other U.S. airports from which Mexicana provides service are: (i) John F. Kennedy International Airport in New York, New York; (ii) O'Hare International Airport in Chicago, Illinois; (iii) Dallas Fort Worth Airport in Dallas, Texas; (iv) Denver International Airport in Denver, Colorado; (v) Fresno Yosemite International Airport in Fresno, California; (vi) McCarran International Airport in Las Vegas, Nevada; (vii) Miami International Airport in Miami, Florida; (viii) Oakland International Airport in Oakland, California; (ix) Orlando International Airport in Orlando, Florida; (x) Sacramento International Airport in Sacramento, California; (xi) San Antonio Airport in San Antonio, California; (xii) San Francisco International Airport in San Francisco, California; (xiii) San Jose Airport in San Jose, California; and (xiv) Washington Dulles Airport in Dulles, Virginia.

11. Over the course of the past few years, Mexicana, like many other entities in a variety of industries throughout the world, has faced significant challenges. The worldwide recession that has taken hold over the past three years has created an environment of economic distress for companies and individuals alike; and that environment has impacted Mexicana's operations. In addition, Mexicana's operations have been impacted over the past few years by an unprecedented, unexpected and sustained rise in global energy prices. Indeed, the rising price of energy (in particular, jet fuel) has resulted in a rapid and significant escalation in Mexicana's operational costs. Finally, in 2009, many businesses in Mexico, including Mexicana, suffered losses as a result of a flu epidemic that had a severe, immediate and unexpected impact upon Mexican tourism and business-related trips and travel.

12. As a result of the foregoing, Mexicana faces financial and operational hurdles that made it prudent for Mexicana to seek relief under the Mexican Business Reorganization Act in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

13. Notwithstanding the pendency of the Concurso Proceeding, I believe that there are various U.S.-based creditors of Mexicana who may be actively seeking to institute legal proceedings against Mexicana in order to seize assets located within the United States or to disrupt the reorganization process that has been commenced in Mexico. It is also possible that creditors will resort to self-help in the United States in order to better their own position without judicial oversight. These are some of the reasons why Mexicana authorized the commencement of Chapter 15 proceedings in this Court.

14. For instance, Mexicana is an obligor under the terms of a Credit Agreement with Banco Mercantil del Norte, S.A. ("Banco Mercantil"), dated as of April 17, 2008 (the "Credit Agreement"), pursuant to which Mexicana and affiliated non-debtor companies have approximately $1,572,420,000 (Mexican Pesos) of indebtedness.[3] The Credit Agreement is the primary financing vehicle on which Mexicana has relied in the past. I am advised that no notices of default have been issued to Mexicana or any other obligor pursuant to the terms of the Credit Agreement.

15. The Credit Agreement is collateralized through the grant of a security interest to Banco Mercantil. That security interest includes deposit accounts in Mexicana's name at Inter National Bank (the "Collateral Accounts"), which acts as collateral agent (the "Collateral Agent") for the benefit of Banco Mercantil with respect to repayment of all obligations under the

---

[3] Applying an exchange rate of 0.0786052, the indebtedness is approximately $123,600,433 (USD).

Credit Agreement. The security interest, and the role of the Collateral Agent, are detailed in a Deposit Account Security Agreement dated as of June 16, 2008.[4]

16. The Collateral Accounts are where Mexicana's U.S.-based credit card and other payments are sent on a daily basis. The Deposit Account Security Agreement specifically provides that unless an event of default has occurred under the terms of the Credit Agreement, the Collateral Agent must transfer the amounts deposited in the Collateral Account to accounts designated by Mexicana (and other obligors). Because an event of default has not been declared under the terms of the Credit Agreement, the funds collected in the Collateral Account presently flow to Mexicana and are an important source of revenue for funding Mexicana's operating expenses. Mexicana's ability to continue to use these funds is all the more important while the Concurso Proceeding is pending. Indeed, any action against the Collateral Accounts would have devastating results for Mexicana because the funds flowing through the Collateral Accounts are a critical source of funding for Mexicana's reorganization efforts and costs.

17. In addition to problems that would arise if action is taken against the Collateral Accounts, Mexicana is concerned about action being taken against operational assets and facilities. Action against Mexicana's aircraft or airport terminal operations and equipment, would seriously disrupt Mexicana's efforts to restructure its affairs in the Concurso Proceeding. If any such action is commenced or taken (with or without judicial oversight or intervention), Mexicana will suffer irreparable harm. Indeed, if creditors are permitted to initiate or undertake any actions of the type noted above, Mexicana's reorganization efforts may completely fail, and such injury is not compensable in money damages.

---

[4] I have not reviewed in detail the security interest(s) which the Credit Agreement and Deposit Account Security Agreement purport to grant, nor have I reviewed in detail any public filings made by Banco Mercantil, the Collateral Agent, or any other parties pursuant to those or any other agreements. Nothing in my Declaration should be construed as an admission that a security interest was either created or properly perfected.

18. Mexicana's concern about aircraft being seized or interfered with is well-founded. Prior to commencement of the Concurso Proceeding, several of Mexicana's aircraft lessors and aircraft parts lessors, issued notices of default to Mexicana. Some of those notices of default were followed by termination notices, and notices demanding that aircraft be grounded. Several of Mexicana's aircraft have been seized, without notice, even though Mexicana was not behind in rent payments. In other instances, lessors have attempted to have aircraft grounded at airports, or to have aircraft registrations revoked. All of these actions have caused great disruption to business operations.

19. As a result of these concerns, I seek entry of a temporary restraining order to temporarily enjoin creditors of Mexicana from initiating or continuing any action in the U.S. in respect of Mexicana and its assets pending a hearing on Mexicana's request for preliminary injunctive relief, as is set forth in Mexicana's Ex Parte Application. I am also seeking a preliminary injunction and application of the automatic stay during the pendency of this Chapter 15 proceeding because I believe that irreparable harm is certain absent such relief.

20. I believe that entry of a temporary restraining order will pose little, if any, harm upon parties that would be subject to the order because the scope of any such injunction would be limited to the territorial jurisdiction of the United States and such parties would be free to seek any available relief in Mexico or from this Court. Issues regarding the ultimate fate of Mexicana's aircraft and the effect of any notices of default, termination or demands that aircraft be grounded, would be addressed by the Mexico Court in the Concurso Proceeding, where Mexicana's assets are subject to oversight by the Mexico Court. Moreover, relief in the form of a temporary restraining order would only be in place until a hearing is held on Mexicana's request for a preliminary injunction. Then, if a preliminary injunction is granted, any continued

relief will only be in place until such time as the Court rules on Mexicana's request that the Concurso Proceeding be recognized as a foreign main proceeding under the Bankruptcy Code.

21. During the period of time in which injunctive relief remains in place, Mexicana will continue to preserve and operate its business as a going concern. Moreover, Mexicana will not dispose of assets in the United States (out of the ordinary course of business) without advising the Court. Thus, the assets of Mexicana will not be irretrievably depleted to the detriment of creditors while the relief sought by Mexicana is in place. On the other hand, I believe that Mexicana will be irreparably harmed should creditors commence actions against Mexicana in the period before the Court can hold a hearing on recognition. As such, I believe that the balance of harms weighs heavily in of issuing the immediate injunctive relief sought by Mexicana.

## STATEMENT PURSUANT TO SECTION 1515(c) OF THE BANKRUPTCY CODE

22. I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. §1515(c).

23. In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to Mexicana that is known to me is the Concurso Proceeding.

## LIST PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

24. I am informed that Bankruptcy Rule 1007(a)(4) provides as follows:

> In addition to the documents required under §1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and

(B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

Fed R. Bankr. P. 1007(a)(4).

25. In compliance with Interim Bankruptcy Rule 1007(a)(4), I hereby provide the following information:

- Corporate Ownership. Mexicana is owned (99.81%) by Nuevo Grupo Aeronautico, S.A. de C.V. ("Grupo Nuevo"), which is a privately-owned company, and by Aeropuertos y Terrenos, S.A. de C.V. (0.16%).

- Administrators in the Concurso Proceeding. As noted above, the Concurso Proceeding was just commenced through the filing of the Concurso petition in the Mexico Court. As such, administrators have yet to be appointed. This list will be supplemented as soon as practicable following the appointment of any administrator in the Concurso Proceeding as is required by Bankruptcy Code Section 1518.

- Parties to Litigation in the United States. As of the date of this Declaration, Mexicana is a party to the following lawsuits pending in the United States:

    1. *Bigfoot Ventures, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. 3:08-CV-01357-BEN-JMA (United States District Court, Southern District of California) (Plaintiff represented by Marc G. Reich, Reich Radcliffe LLP, 4675 MacArthur Ct., Ste. 550, Newport Beach, Cal. 92660);

    2. *Compania Mexicana de Aviacion, S.A. de C.V. v. Jetpower Support, Inc.*, Case No. 07CC09525 (Superior Court of California, County of Orange) (Defendant represented by Jill L. Johnson, Adorno, Ross, Alvarado & Smith, 633 West 5th St., Suite 1150, Los Angeles, Cal. 90071);

    3. *Weber Aircraft, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. CV10-4727 (United States District Court, Central District of California) (Plaintiff represented by William A. Reavey, III, RSR Law Group, LLP, 5330 Carroll Canyon Rd., Ste. 210, San Diego, Cal. 92121);

    4. *Ceats, Inc. v. Continental Airlines, Inc., et al.*, Case No. 610CV120LED (United States District Court, Eastern District of Texas) (includes Mexicana as a defendant) (Plaintiff represented by Fay E. Morrisseau, McDermott Will& Emery LLP, 1000 Louisiana St., Suite 3900, Houston, Tx 77002);

5. *Jiminez v. Mexicana Airways, et al.*, Case No. A09606149-C (Clark County, Nevada, District Court (Plaintiff represented by David J. Winterton, David J. Winterton & Assoc., 211 N. Buffalo Dr. Ste. A, Las Vegas, Nevada 89145); and

6. *Drury Inns Inc. v. Mexicana Airlines*, Case No. 348091 (Bexar County, Texas, County Court at Law) (Plaintiff represented by Jaay D. Neal, 322 W. Woodlawn Ave., San Antonio, Tx 78212).

- <u>Parties Against Whom Provisional Relief is Sought</u>. Mexicana's primary U.S.-based creditors that will be affected by provisional relief are Mexicana's: (i) aircraft and spare engine lessors and owner trust trustees; (ii) the financial institutions with whom Mexicana has financing agreements or arrangements; and (iii) real property landlords. Each of those parties will be served with a notice of filing of the Petition and Application and all documents in support, as well as any order to show cause and temporary restraining order entered by the Court, all as is set forth in more detail in the Affidavit of William C. Heuer, Esq., filed contemporaneously herewith. All U.S.-based service contract counterparties will be served with a notice of the Chapter 15 filing and provisional relief sought.

## **ITEMS REQUIRED BY BANKRUPTCY CODE SECTION 1515**

26. Bankruptcy Code Section 1515(b) requires that a petition for recognition of a foreign proceeding be accompanied by certain documents. Accordingly, the following documents are attached hereto, designated as the Exhibits noted below:

Exhibit A - Spanish version of Board Resolution;
Exhibit B - English version of Board Resolution;
Exhibit C - Spanish version of Concurso Proceeding Petition; and
Exhibit D - English version of Concurso Proceeding Petition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: August 2, 2010            /s/ Maru E. Johansen
       Los Angeles, California   Maru E. Johansen