DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
William H. Schrag, Esq.
*wheuer@duanemorris.com*
*wschrag@duanemorris.com*

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | Case No. 10-[__] |
|     Debtor in a Foreign Proceeding. | |

**DECLARATION OF DEBTOR'S MEXICAN**
**COUNSEL PURSUANT TO 28 U.S.C. §1746**

I, Jaime René Guerra González, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    I am the managing partner in the Mexico-based law firm of Guerra González y Asociados, S.C., located at Santa Margarita 232, Col. Del Valle, Mexico City, Federal District, 03100, Mexico. I hereby submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Request for Related Relief (the "Petition"), which is to be filed contemporaneously herewith, and which seeks entry of an order (i) recognizing the voluntary judicial reorganization proceeding (the "Concurso Proceeding") that was initiated by Compañía Mexicana de Aviación, S.A. de C.V. ("Mexicana") in the District Court for Civil Matters for The Federal District, Mexico (the "Mexico Court"), on August 2, 2010, as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United

States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), and (ii) granting related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code. This Declaration is also submitted in support of Mexicana's Ex Parte Request for Provisional and Interim Relief pursuant to section 1519 of the Bankruptcy Code. Except as is set forth below, I have personal knowledge of the matters set forth in this Declaration.[1]

2. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in English. I am counsel to Mexicana in the Concurso Proceedings in Mexico.

3. In this Declaration, after describing my background and qualifications with respect to Mexico's Ley de Concursos Mercantiles, as officially published in the Diario Oficial de la Federacion on May 12, 2000 (the "Mexican Business Reorganization Act" or "MBRA"),[2] I provide a description of the general structure of those provisions of the Mexican Business Reorganization Act that specifically relate to this Court's consideration of the Chapter 15 Petition. I then describe the status of Mexicana as the subject of a voluntary judicial reorganization proceeding in Mexico pursuant to the Mexican Business Reorganization Act.

4. In preparing this Declaration, I have reviewed the (i) Chapter 15 Petition; (ii) all documents submitted in support of the Chapter 15 Petition; and (iii) the Mexican Business Reorganization Act as it relates to Chapter 15 of the Bankruptcy Code and the claims of U.S.-based creditors in the Concurso Proceeding.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Petition.

[2] The Spanish version of the Act can be found on the Internet website of the Mexican Federal Institute of Business Reorganization Specialists (IIFECOM), at http://ifecom.cjf.gob.mx/PDF/LCMyND/8.pdf. On December 27, 2007, amendments to the MBRA were published in the Diario Oficial de la Federación ("Federal Official Gazette" or "DOF"), which became effective as of December 28, 2007.

**Background and Qualifications**

5.  Pertinent aspects of my legal background are as follows: I earned my law degree from Universidad Nacional Autónoma de México in 1968. I obtained my license to practice law from Dirección General de Profesiones of the Secretaría de Educación Pública in 1970. Since obtaining my law degree, I have been a practicing attorney with different law firms, until 1989 when I founded, with other partners, the law firm of Guerra González y Asociados, S.C. where I have been the only managing and director partner. As part of my practice, I have been involved in several major insolvency litigation proceedings pursuant to the Mexican Business Reorganization Act and the former Ley de Quiebras y Suspensión de Pagos (former Mexican Bankruptcy and Suspension of Payments Act). I also obtained a master degree know as MCL Masters in Comparative Law from the Southern Methodist University in 1972.

6.  I have participated and lectured in an important number of conferences organized, among others, by the International Insolvency Institute, the Instituto Iberoamericano de Derecho Concursal (Panamerican Insolvency Law Institute), Instituto Federal de Especialistas en Concursos Mercantiles (Federal Business Reorganization Specialists Institute), the Consejo de la Judicatura Federal (Federal Judiciary Committee), as well as by many other Institutes, Law Schools and judicial entities from different States of Mexico  I have also been professor in Universidad Latinoamericana (Diploma on Business Reorganization Law – 2007), Universidad Marista (class on Business Reorganization Law – 2001 to 2003) and Universidad Interncontinental (Civil Procedure Law – 1980 to 1982).

7.  I am author of the yet unedited of the book "Apuntes y Comentarios sobre el Derecho Concursal en México" (Notes and Comments about the Mexican Business Reorganization Law). I have also contributed with articles published in the Insolvency Newsletter of the International Law Institute and participated as co-author of the Restructuring

and Insolvency Cross-border Handbooks published by the Practical Law Company for the years 2006/2007, 2007/2008, 2008/2009, 2009/2010 and 2010/2011.

8. I have also been considered and recommended for Latin Lawyer Magazine and Practical Law Company, while I have a representation in the Insurance Law List, Instituto Iberoamericano de Derecho Concursal (Panamerican Insolvency Law Institute), International Bar Association, International Law Institute, International Law Office and Martindale – Hubbell International. My trajectory, integrity and commitment have been recognized el El Consejo Cívico de Ciudadanos e Instituciones Sociales, S.C., El Patronato de la Casa de Cultura de Tamaulipas and La Unidad Tamaulipeca, S.C.

9. I have represented and advised Mexicana with respect to all aspects of Mexicana's Mexican insolvency and business reorganization matters in the Concurso Proceeding.

10. Papers submitted by Mexicana in its Concurso Proceeding have been drafted by me or under my supervision.[3]

## THE MEXICAN BUSINESS REORGANIZATION ACT

**A. Overview of Pertinent Provisions of the Mexican Business Reorganization Act**

11. The Mexican Business Reorganization Act, also known as the *Ley De Concursos Mercantiles,* went into effect on May 15, 2000. The new statute replaced Mexico's 1943 *Ley de Quiebras y de Suspensión de Pagos*, officially published in the Diario Oficial de la Federacion on April 20, 1943. The older law was frequently criticized for delay in concluding proceedings

---

[3] The information concerning Mexicana's Concurso Proceeding in Mexico is drawn either from public documents or from my personal knowledge. Where the overview contained in this Declaration is concerned, I have not relied on confidential attorney-client communications or on confidential documents prepared in anticipation of litigation.

and for the economic inefficiency of not permitting otherwise viable enterprises to reorganize as going-concerns, but rather focusing on liquidation of the insolvent debtor.

12. By contrast, the Mexican Business Reorganization Act expressly recognizes that it is "in the public interest to preserve companies and to prevent a general default in payment from risking their failure and the failure of other companies with which they have dealings." Mexican Business Reorganization Act, Art. 1. To that end, the Mexican Business Reorganization Act establishes a reorganization process similar to that which exists under Chapter 11 of the Bankruptcy Code in the United States.

13. Cases brought under the Mexican Business Reorganization Act are commenced by the filing of a petition for business reorganization either by the debtor, a creditor or the Attorney General (Ministerio Público). *See id*. At Art. 21. The petition is filed with the Mexican Federal District court in the jurisdiction in which the debtor has its primary place of business. *See id.* At Art. 17. As Mexicana has its primary place of business in Mexico City, the petition was filed with the Federal District Court for Civil Matters of The Federal District on August 2, 2010. As I understand the process of commencing a Chapter 11 reorganization under the Bankruptcy Code, a similar process is used.

14. Upon filing of a voluntary petition under the Mexican Business Reorganization Act, a court-appointed examiner ("<u>Visitador</u>") examines the company's books and records and begins an "auditing" or review process to determine if the company satisfies the eligibility requirements to be a debtor as defined and required under the Mexican Business Reorganization Act. *See id*. At Arts. 10, 29-40.

15. If the Visitador determines that the company meets the requirements to be a debtor, the Court will issue a "business reorganization judgment" providing that the petition will

be granted and the debtor admitted to the bankruptcy reorganization process. *See id*. At Art. 24. Based on my experience, I expect that the Visitador will be able to complete his analysis of Mexicana's petition for relief in the Concurso Proceedings within approximately 30 days after his appointment. During that period of time, Mexicana will request that the Court provide protections to Mexicana in the nature of provisional injunctions.

16. If the Court decides to grant the petition and treat the case as a business reorganization, all efforts by creditors to enforce judgments or otherwise seize or foreclose assets of the debtor will be automatically stayed. *See id*. at Art. 43, §§ IV; Art. 65.[4]

17. If the petition is granted and the case is judicially recognized as a business reorganization, the case will then enter a "conciliation" stage and a conciliador ("Conciliator") will be appointed. *See* id. at Art. 43, §§ IV, V. The conciliation stage is analogous to what I understand to be the "exclusivity" period under U.S. bankruptcy law. The Conciliator is a professional associated with the Federal Institute of Business Reorganization Specialists (the *Instituto Federal de Especialistas de Concuros Mercantiles*), a branch of the Mexican federal judiciary. The Conciliator is responsible for mediating and negotiating between a debtor and its creditors, and is also responsible for proposing a plan of reorganization. *See id*. at Arts. 148-151. So long as the debtor remains in control of its business, the Conciliator is empowered to "monitor the accounting and any transactions carried out by the Merchant." *See id*. at Art. 75. In addition, the Conciliator is empowered to (i) accept or reject executory contracts; (ii) take on additional debt; and (iii) permit the sale of postpetition assets outside the ordinary course of

---

[4] In relevant part, Article 65 of the Mexican Business Reorganization Act provides as follows: "From the business reorganization judgment issue date to the end of the conciliation stage, no seizure or enforcement order may be executed against the Merchant's properties and rights." Under the Mexican Business Reorganization Act, the term "Merchant" has effectively the same meaning as the term "debtor" under the Bankruptcy Code.

business. *Id*. The Conciliator is further empowered to ask the court to remove and replace the management of the debtor. *See id*. at Art. 81.

18. The conciliation process can last no longer than 365 days. *See id*. at Art. 145. If, within that time, a plan of reorganization has not been proposed, the debtor will be directed by the court to enter liquidation proceedings.

19. If the debtor, with the assistance of the Conciliator, succeeds in formulating a reorganization agreement (or "<u>conciliation</u>"), the Conciliator must submit the agreement to the debtor's "allowed" creditors for their approval. In order to be considered valid, the agreement must be ratified by a majority of "regular" creditors, as further explained herein. *See id*. at Art. 157.

20. After receiving approval of a reorganization agreement from the debtor's creditors, the Conciliator must then submit the reorganization plan to the court for its own review and approval. *See id*. at Art. 161. Creditors who object to the proposed plan are entitled to file objections. *See id*. at Art. 162. Following this period of comments and objections, the court may then approve the reorganization plan if it finds that the "proposed agreement meets all of the requirements of this chapter and is not inconsistent with any public policy provision." *See id*. at Art. 164.

21. Obviously, the above description of the reorganization agreement process summarizes only the most pertinent provisions of the Mexican Business Reorganization Act.

**B. <u>The Specific Rules Provided in the Mexican Business Reorganization Act for Entities Operating Public Services Under a Concession Title</u>**

22. The Mexican Business Reorganization Act provides for special rules applicable to entities operating Public Services under a concession title, such as Mexicana. *See id.* at Art. 237-244. The Concurso Proceeding of the mentioned entities will be subject to the laws, regulations,

concession titles and other administrative rules governing the concession and the Mexican Business Reorganization Act will be also applied so long as it does not conflict or contradict the mentioned provisions. *See id.* at Art. 238.

23.     The authority granting the concession title will have the sole power and discretion to propose the appointment, removal and substitution of the Conciliator and the Trustee and will supervise their activities. *See id.* at Art. 240. In the case of Mexicana, the authority that granted its concession title was the Mexican Ministry of Transport and Communications (Secretaría de Comunicaciones y Transportes) (the "<u>SCT</u>"), therefore, it will be the administrative authority that will participate in Mexicana's Concurso Proceeding.

24.     When the SCT so considers it to be necessary to the continuity and safety of the public service, it may propose to the Judge the substitution of the administrators of the entity and the appointment of the person that will continue its administration. *See id.* at Art. 241. The Judge shall immediately take any and all necessary actions to allow the appointed administrator to take possession of the entity's business. *See id.* Art. 241.

25.     Any reorganization agreement must be on notice to the SCT, who may exercise a veto power during the time frame provided in article 162 of the Mexican Business Reorganization Act. *See id.* Art. 242.

26.      In any case that the reorganization or liquidation of the entity provides for the transmission of the concession title, the transaction must be previously approved by the SCT. *See id.* Art. 244.

27.      The participation of the SCT brings a great deal of certainty to the Concurso Proceeding of Mexicana, as it should provide to maintain Mexicana as an on-going concern for

the benefit of the users of the public service provided by Mexicana and in the best interest of all the participating parties.

### C. The Mexican Business Reorganization Act Satisfies All of the Factors for Granting Additional Relief Set Forth in Section 1507 of the Bankruptcy Code

#### i. *Provisions Providing for Just Treatment of All Holders of Claims Against or Interests in Mexicana's Property*

30. The Mexican Business Reorganization Act provides for the just treatment of all holders of claims against or interests in the estate, including foreign creditors. Article 290 of the Mexican Business Reorganization Act specifically provides that "foreign creditors shall have the same rights as Mexican creditors in relation to the commencement of a proceeding in this State and the participation in it pursuant to this Act."

#### ii. *Protection Against Preferential or Fraudulent Disposition of Property*

31. The Mexican Business Reorganization Act contains several protections against the preferential or fraudulent disposition of property of a debtor's estate.

32. First, throughout the entire process of reorganization, the debtor's estate is subject both to (i) the review of the court and (ii) the supervision of the outside examiner (in the initial phase) and the independent Conciliator (in the conciliation phase). *See id*. at Art. 75.

33. Second, Chapter VI of the Mexican Business Reorganization Act (Articles 112-119) sets forth specific provisions prohibiting fraudulent acts against creditors, including fraudulent conveyances, self-dealing transactions, transactions with family members, and transactions with related business associations, if done without proper consideration. Finally, if the Conciliator suspects the presence of fraud or preferences, he may ask the supervising Court to remove the debtor's management. *See id*. at Art. 81.

> iii. *Provisions Pertaining to Priority and*
> *Distribution of Property or Proceeds from the Estate*

34. The Mexican Business Reorganization Act provides for the recognition and prioritization of creditor claims and for the distribution of estate assets to be made in accordance with that ranking. Articles 217 through 228 of the Mexican Business Reorganization Act set forth a comprehensive ranking of creditor priorities. Apart from the *sui generis* category of "singularly privileged creditors," creditor classes are categorized and ranked as "creditors with collateral," "creditors with special privileges," and "regular creditors." *See id*. at Art. 217. Labor credits –other than those provided in section I of article 224 of the Mexican Business Reorganization Act[5]- and Tax credits will be paid after "singularity privileged creditors" and "creditors with collateral" but before "creditors with special privilege". *See id.* at Art. 221.

35. "Creditors with collateral" are defined as mortgagees and pledgees — the most common forms of security interests granted in Mexico. The claims of such creditors are paid out of the proceeds of the property that has been collateralized against the mortgage or pledge, and generally in the order that their pledges or mortgages have been registered in accordance with applicable Mexican laws. *See id*. at Art. 219.

36. "Creditors with a special privilege" are "those who, according to the Commercial Code or applicable law, have a special privilege or a retention right," such as bailees and sellers in possession.

37. "Regular Creditors" consist of all creditors other than those defined above. They collect proceeds of the estate on a *pro rata* basis without distinction as to dates. *See id*. at Art. 222.

---

[5] Labor credits referred to in section XXIII, letter A, of article 123 of the Mexican Constitution and its regulatory laws, including wages accrued two years before the judgment for business reorganization is rendered, will be paid first to any other credit provided in article 217 of the Mexican Business Reorganization Act. *See id.* at Art. 224-I.

38. In addition to the creditor rankings set forth above, the Mexican Business Reorganization Act recognizes certain judicially approved estate administrative claims which receive priority over any other claim. They consist of: (i) labor credits referred to in section XXIII, letter A, of article 123 of the Mexican Constitution and its regulatory laws, including wages accrued two years before the judgment for business reorganization is rendered; (ii) expenses incurred by the debtor in the administration of the estate provided that those expenses are approved by the Conciliator; (iii) expenses incurred in connection with the protection and preservation of the estate; (iv) expenses incurred as a result of judicial or extra-judicial proceedings that benefit the estate; and (v) the necessary expenses and fees incurred by the Conciliator so long as they are in accord with the regulations of the Mexican Institute of Business Reorganization Specialists. See id. at Art. 224.

39. The preferences in payment noted in numbers (ii), (iii), (iv) and (v) above, however, do not take priority over creditors with collateral — which are junior in the order of priority — unless (i) the expenses are the result of "any litigation filed to defend or recover any properties which were the subject of the collateral or to which the privilege applies . . . or (ii) expenses necessary for the repair, preservation and sale" of the secured assets. *See id*. at Art. 225.

40. Article 221 requires that tax and some labor related liabilities be paid after satisfaction of claims of the above-mentioned secured creditors. If a tax liability, however, is secured by collateral, such liability will be treated in accordance with the priority afforded to creditors with collateral in accordance with Articles 217 and 225.

    *iv.*    *Protection of Foreign Creditors*

41. Finally, the Mexican Business Reorganization Act expressly protects the rights of foreign creditors and ensures that their claims will be treated the same as those of domestic

creditors. The Act provides that foreign creditors have exactly the same rights as Mexican creditors. *See id*. at Art. 290.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Mexico
August 2, 2010

*/s/ Jaime René Guerra González*
Jaime René Guerra González