HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
John M. Toriello, Esq.
Arthur E. Rosenberg, Esq.
Marc L. Antonecchia, Esq.
*Attorneys for Wells Fargo Bank Northwest, N.A.
not in its individual capacity but solely as owner trustee,
Marco Aircraft Leasing Limited, and AeroTurbine, Inc.*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

COMPANIA MEXICANA DE
AVIACION, S.A. de C.V.,

          Debtor in a Foreign Proceeding.

------------------------------------------------------------x

Chapter 15

Case No. 10-14182 (SMB)

## EMERGENCY MOTION FOR RELIEF FROM
## TEMPORARY RESTRAINING ORDER

TO:   THE HONORABLE ARTHUR J. GONZALEZ
       UNITED STATES BANKRUPTCY JUDGE

Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), Marco Aircraft Leasing Limited ("Marco"), and AeroTurbine, Inc., as parties in interest in the above-captioned chapter 15 case (collectively, the "Terminating Parties"), by their counsel, Holland & Knight LLP, hereby submit this emergency motion for the entry of an order granting relief from the Amended Temporary Restraining Order issued on August 3, 2010 in the above-captioned case (the "TRO"), pursuant to

ny-931313

Paragraphs 12 and 16 of the TRO and based on applicable provisions of the U.S. Bankruptcy Code and the Mexican bankruptcy law, and respectfully represent as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Chapter 15 Filing

2. On August 2, 2010 (the "Petition Date"), Maru E. Johnson (the "Foreign Representative"), in her capacity as the alleged foreign representative of Compania Mexicana de Aviacion, S.A. de C.V ("Mexicana"), filed a petition and application for recognition of its Mexican "Concurso Proceeding" (the "Mexican Proceeding") as a "foreign main proceeding," and for recognition of the Foreign Representative as a "foreign representative," under chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

3. Pursuant to an Ex Parte Application for Order (A) Granting Provisional Relief and Injunction and (B) Scheduling Hearing dated August 2, 2010, this Court issued on an ex parte basis Order to Show Cause with Temporary Restraining Order dated August 2, 2010.

4. On August 3, 2010, the Court issued an Amended Order to Show Cause with Temporary Restraining Order ("TRO")

5. Paragraph 12 of the TRO provides that "[a]ny party in interest may seek relief from this order or to be heard with respect to this order, on an emergency basis, at any time prior to the hearing scheduled for August 16, 2010."

6. Paragraph 16 of the TRO provides that "[t]his Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 proceeding, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court."

## SUMMARY OF FACTS

7. As discussed at length in the accompanying Declarations of Aengus Kelly ("Kelly Declaration") and Lewis A. Wood ("Wood Declaration"), the Terminating Parties are the lessors of certain aircraft, aircraft engines, and component parts. Wells Fargo leased four (4) aircraft to Mexicana, Marco leased one (1) aircraft to Mexicana, and AeroTurbine leased two (2) engines and certain CRJ 200 Rotable Components ("CRJ Components") to Mexicana. The Aircraft, Engines, Parts, Aircraft Documentation, Aircraft Records, and CRJ Components are described in paragraph 2 of the Kelly Declaration and paragraph 2 of the Wood Declaration.

8. As discussed in paragraphs 4 to 17 of the Kelly Declaration, Wells Fargo leased to Mexicana aircraft bearing serial numbers 4204, 4127, 4254, and 0361 (the "Aircraft" and each, individually by serial number, the "4204 Aircraft", the "4127 Aircraft", the "4254 Aircraft", and the "0361 Aircraft," respectively), and Marco leased to Mexicana an aircraft bearing serial number 1621, which is hereinafter known as the "1621 Aircraft", in each case pursuant to a lease agreement that, among other things, required Mexicana to pay Basic Rent to the applicable lessor. Each of these leases is hereinafter known as a "Lease," and each Lease is known for the Aircraft that is covered by such Lease, such as the "4204 Lease,"

9. As discussed in paragraph 4 to 17 of the Wood Declaration, AeroTurbine leased to Mexicana an engine bearing serial number V0029 ("V0029 Engine") and CRJ 200 Rotable

Components ("Component Parts"), and leased to Mexicana Inter S.A. de C.V. ("MXI") an engine bearing serial number 872318 ("872318 Engine").

10. As discussed in paragraphs 18 to 24 of the Kelly Declaration and paragraphs 18 to 22 of the Wood Declaration, the parties to the Leases entered into separate Transaction Agreements with respect to each Lease (the "Transaction Agreements", with each Transaction Agreement identified by the Aircraft, Engine, or Component Parts to which it relates), in order to resolve events of default incurred by Mexicana and MXI and existing at the time of the execution of the Transaction Agreements. In the case of the 872318 Engine, AeroTurbine, Mexicana, and MXI entered into a Tripartite Transaction Agreement.

11. Pursuant to Section 3 of each Transaction Agreement, Mexicana (and, in the case of the 872318 Transaction Agreement, MXI) was to make payments with respect to the Lease Indebtedness (as defined below) for each Lease on the dates on which such payments were due in accordance with Schedule 1 of each Transaction Agreement. "Lease Indebtedness" is defined in each Transaction Agreement to include the amount of Basic Rent and Maintenance Reserves due and owing under each respective Lease.

12. Notwithstanding Mexicana's absolute and unconditional obligation to make all Basic Rent payments and payments under the Transaction Agreements with respect to the Lease Indebtedness, Mexicana has failed and refused to make payments due under the Leases and Transactions and thereby has caused an "Event of Default" under each.

13. As of July 29, 2010, Mexicana had failed to pay the following amounts:

(i) For the 4204 Aircraft, Basic Rent due as of July 26, 2010 in the amount of at least $315,600.00 and Lease Indebtedness (as defined in the 4204 Transaction Agreement) due as of July 23, 2010 in the amount of at least $93,581.11.

(ii) For the 4127 Aircraft, Lease Indebtedness (as defined in the 4127 Transaction Agreement) due as of July 23, 2010 in the amount of at least $127,287.57.

(iii) For the 4254 Aircraft, Lease Indebtedness (as defined in the 4254 Transaction Agreement) due as of July 23, 2010 in the amount of at least $102,871.75

(iv) For the 0361 Aircraft, Lease Indebtedness (as defined in the 0361 Transaction Agreement) due as of July 23, 2010 in the amount of at least $59,332.47; (v) For the 1612 Aircraft, Lease Indebtedness (as defined in the 1612 Transaction Agreement) in the amount of at least $204,739.72; (vi) For the V0029 Engine, $39,000 due under the V0029 Lease on July 7, 2010, $56,261 due on July 23, 2010 under the V0029 Transaction Agreement, and $56,261 due on July 30, 2010 under the V0029 Transaction Agreement; (vii) For the 872318 Engine, $26,151 due under the 872318 Transaction Agreement on July 23, 2010 for Engine Lease Indebtedness, $12,875.30 due under the 872318 Transaction Agreement on July 23, 2010 for Outstanding Receivables Indebtedness, $41,235.56 due under the 872318 Transaction Agreement on July 1, 2010 for Outstanding Receivables Indebtedness, $26,151 due under the 872318 Transaction Agreement on July 30, 2010 for Engine Lease Indebtedness, $12,875.30 due under the 872318 Transaction Agreement on July 30, 2010 for Outstanding Receivables Indebtedness, and $41,235.56 due under the 872318 Transaction Agreement on August 1, 2010 for Outstanding Receivables Indebtedness; (viii) For the Component Parts, Mexicana has failed to pay AeroTurbine $47,000 due under the Component Parts Lease on July 1, 2010, $24,845 due on July 23, 2010 under the

Component Parts Transaction Agreement, and $24,845 due on July 30, 2010 under the Component Parts Transaction Agreement.

14. Interest continues to accrue on these amounts.

15. The delinquent payments constitute Events of Default under the Leases and Transaction Agreements pursuant to Section 26.2(ii) and Section 26.2(xvii)(c) of the 4204 Lease, Clause 3.2 and Clause 5.1 of the 4204 Transaction Agreement; Section 26.2(ii) and Section 26.2(xvii) of the 4127 Lease, Clause 3.2 and Clause 5.1 of the 4127 Transaction Agreement; Section 26.2(ii) and Section 26.2(xvii)(c) of the 4254 Lease, Clause 3.2 and Clause 5.1 of the 4254 Transaction Agreement; Section 26.2(xxiv) of the 0361 Lease, Clause 3.1 and Clause 5.1 of the 0361 Transaction Agreement; Section 15.1(u) of the 1612 Lease, Clause 3.1(b) and Clause 4 of the 1612 Transaction Agreement; Clause 3.2 and Clause 5.1 of the V0029 Transaction Agreement; Clause 3.2 and Clause 5.1 of the 872318 Transaction Agreement; Clause 3.1(b) and Clause 5.1 of the Component Parts Transaction Agreement.

16. Pursuant to Clause 4 of each Transaction Agreement and in accordance with Section 23.3.1(i) of the 4204 Lease, 4127 Lease, and 4254 Lease, Section 23.3 of the 0361 Lease, Section 16.1(b) of the 1612 Lease, Section 6 of the Component Parts Lease, Section 10 of the V0029 Lease, and Section 12 of the 872318 Lease, upon the occurrence of an Event of Default, Lessor is entitled, among other things, to cancel the leasing and demand the immediate return of the Aircraft, Engine, or Component Parts, as the case may be, and demand payment of all Lease Indebtedness Interest, interest on the Lease Indebtedness at the Interest Rate or the interest Rate that would have otherwise due under the respective Leases.

17. By Notices of Cancellation, Termination, and Payment Demand, letters dated July 29, 2010, and delivered by or before 11:30 a.m. EST that day (the "Notices"), Wells Fargo,

Marco, and AeroTurbine gave notice to Mexicana of Mexicana's defaults under the Leases and Transaction Agreements, cancelled the leasing of the equipment, demanded payment of the past due amounts due and owing thereunder, as well as accelerated amounts, and demanded that Mexicana return the equipment to Plaintiffs immediately. Kelly Decl., ¶ 30; Wood Decl., ¶¶ 25-26. The Notices were delivered to Mexicana *prior to* the filing of the Mexicana Proceeding and the filing of this Case by the Foreign Representative.

18. The Leases and Transaction Agreements define an "Event of Default" as, among other things, Mexicana's failure to make any payment of Basic Rent under the Leases or any payment of Lease Indebtedness under the Transaction Agreements.

19. Pursuant to the Leases and Transaction Agreements, Wells Fargo, Marco, and AeroTurbine have the right to immediately repossess the Aircraft and Engines, as applicable.

## LEGAL BASIS FOR RELIEF FROM THE TEMPORARY RESTRAINING ORDER

20. The Leases at issue are governed by New York law. *See, e.g.*, Kelly Decl., Exh. A at Section 28.1. In addition to a contractual right of repossession, under New York law, the lessors have the statutory right to take immediate possession of the Aircraft upon default. Specifically, Section 2-A-523(1) of New York's Uniform Commercial Code ("UCC") provides, in part:

> (1) If a lessee . . . fails to make a payment when due . . . the lessee is in default under the lease contract and the lessor may:
>
> (a) cancel the lease contract. . .
>
> (c) . . . take possession of goods previously delivered . . . .
>
> N.Y. U.C.C. § 2-A-523(1)(c).

21. N.Y. U.C.C. § 2-A-505 further provides: "On cancellation of the lease contract, all obligations that are still executory on both sides are discharged."

22. Consistent with both the terms of the Leases and the UCC, the cancellation of the leasing of the aircraft terminated the obligations of Wells Fargo, Marco, and AeroTurbine to lease the Aircraft, Engines and Component Parts, terminated all of Mexicana's rights under the Leases, and entitled Wells Fargo, Marco, and AeroTurbine to the immediate return of the Aircraft, Engines, and Component Parts. *See* N.Y. U.C.C. § 2-A-505, § 2-A-523; *Connecticut Nat'l Bank v. Trans World Airlines*, 762 F. Supp. 76 (S.D.N.Y. 1991) (granting summary judgment after defendant defaulted on an equipment trust agreement involving sale and leaseback of ten commercial jet aircraft; court emphasized that once the lessee defaulted the lessor was entitled to reclaim the property).

23. Property of a bankrupt entity is determined under applicable state law. As stated in *Butner v. U.S.*, 440 U.S. 48 (1979), "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner* at 55.

24. In addition, under Section 541 (a)(1) of the Bankruptcy Code, the bankruptcy estate of a debtor in bankruptcy generally "is comprised of ... all legal or equitable interest of the debtor in property as of the commencement of the case . . .." *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3rd Cir. 1997), citing 11 U.S.C. § 541 (emphasis added). As noted above, it is clear that Mexicana did not have any further legal or equitable interests in the Aircraft or the Leases as of August 2, 2010, the date that it filed the Mexican Proceeding and the Foreign Representative filed this Case.

25. The effect of the cancellation of the leasing of the Aircraft, Engines, and Component Parts are that they are no longer assets or property of Mexicana's estate under the

Bankruptcy Code, and are no longer subject to the stay provided for in Section 362 of the Bankruptcy Code or the injunctions and prohibitions provided for under the TRO. Mexicana has no further legal or equitable interests under any of the Leases. Accordingly, the Leases and Mexicana's rights thereunder are not currently subject to the TRO.

26. Furthermore, as stated in *Collier on Bankruptcy* and in numerous cases in this district and elsewhere, "[w]hen the property in question is no longer property of the estate on the petition date, the automatic stay of actions against property of the estate no longer applies. Thus, for example, if a contract or lease terminated prior to the commencement of a case, it will not become property of the estate, and the other party may treat the agreement as terminated." 3 Collier on Bankruptcy, ¶ 362.03[5][a] at pp. 362-22.

27. As a matter of case law, "[i]t is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither effected by the automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor under 11 U.S.C. §365." *In re Scarsdale Tires Incorporated*, 47 B.R. 478 at 480 (Bkrtcy. S.D.N.Y 1985). *See also In re Margulis*, 323 B.R. 130 (Bkrtcy. S.D.N.Y 2005). In addition, "[w]hen a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court..., the Bankruptcy Court cannot then cultivate rights where none can grow." *Id.*

28. Finally, as set forth in the Declaration of Carlos Sierra, which is annexed to this Motion, the termination of the rights of a lessee prior to a Mexican bankruptcy filing will terminate and cancel all of the rights that a debtor has to such lease or the assets leased under Mexican bankruptcy law.

29. Under any applicable law, Mexicana has no rights to or in the Aircraft or the Leases as of the filing of the Mexican Proceeding and the filing of this Chapter 15 proceeding, to the effect that neither the Aircraft nor the Leases, nor any rights of the Terminating Parties with respect thereto, is subject to the TRO or to the prohibitions or injunctions set forth therein.

## **RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED**

30. By this motion, the Terminating Parties seek entry of an order providing relief from, and modifying, the TRO, as set forth below.

31. Wells Fargo, Marco, and AeroTurbine seek immediate relief based on the likelihood of irreparable harm as discussed in paragraphs 32 to 48 of the Kelly Declaration and 30 to 43 of the Wood Declaration.

32. On July 30, 2010, Wells Fargo and Marco filed a Complaint in the United States District Court for the Southern District of New York styled *Wells Fargo Bank Northwest, N.A. and Marco Aircraft Leasing Limited, N.A. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 10 Civ. 5780 (RJS). In the Complaint, Wells Fargo and Marco seek damages for the non-payment of amounts due under the Leases and injunctive relief directing the grounding and immediate return of the Aircraft. AeroTurbine wishes to file a similar action pursuant to the leases of its engines and Component Parts.

33. The District Court had scheduled a hearing on Wells Fargo's and Marco's application for a preliminary injunction for August 4, 2010 at 2:30 p.m. As a result of Mexicana's bankruptcy filing, however, the District Court issued an Order dated August 3, 2010 that adjourned the hearing *sine die* and stayed the action pending further order of the Court.

34. Unless this Court issues the requested relief, Wells Fargo and Marco will be unable to proceed with the action in the District Court and AeroTurbine will be unable to initiate an action seeking similar relief.

35. Based on the foregoing, the Terminating Parties submit that the Court should issue the Order for Relief in the form annexed to this Motion.

36. Nothing herein shall waive in any way the right of the Terminating Parties to object to, move or take any other actions with respect to the TRO or the permanent injunction requested in the Amended Order to Show Cause or any other motion made or relief requested in connection with the Case, including, but not limited to, the application of the Foreign Representative for recognition of the Foreign Representative as a "foreign representative," of the Mexican Proceeding as a "foreign main proceeding," under Chapter 15 of the Bankruptcy Code.

37. As set forth in paragraphs 32 to 48 of the Kelly Declaration and 30 to 43 of the Wood Declaration, it is necessary that the relief requested in this Motion be granted immediately, upon Order to Show Cause, in order to avoid the irreparable harm to the Terminating Parties.

38. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Terminating parties hereby respectfully submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York, or requests that the Court waive such requirement on the facts presented.

## NOTICE

39. A copy of this Motion has been provided by email to: (i) counsel for the Foreign Representative; (ii) the United States Trustee for the Southern District of New York, 33 Whitehall Street, New York, New York 10004; and (iii) all parties that have, pursuant to Bankruptcy Rule 2002, formally appeared and have requested service in this Case. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

40. No previous motion for the relief sought herein has been made to this or any other court.

**[continued on the following page]**

WHEREFORE, the Terminating Parties respectfully request that this Court: (a) grant relief from the TRO as set forth in the Order Granting Relief attached as Exhibit 1 hereto; (b) grant the Terminating Parties such other and further relief as the Court may deem proper.

Dated: August 4, 2010
New York, New York

Respectfully submitted,

*/s/ John M. Toriello*

John M. Toriello, Esq.
Arthur E. Rosenberg, Esq.
Marc L. Antonecchia, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Attorneys for Wells Fargo Bank Northwest, N.A. and Marco Aircraft Leasing Limited*

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re: :
:
COMPANIA MEXICANA DE : Chapter 15
AVIACION, S.A. de C.V., :
: Case No. 10-14182 (SMB)
:
Debtor in a Foreign Proceeding. :
:
:
---------------------------------------------------------------x

## ORDER GRANTING RELIEF FROM TEMPORARY RESTRAINING ORDER

THIS MATTER having come before the Court upon the Application motion (the "Motion")[1] dated August ___, 2010 of Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), Marco Aircraft Leasing Limited ("Marco") and AeroTurbine, Inc. ("ATI" and, with Wells Fargo and Marco, collectively, the "Terminating Parties"), for entry of an order granting relief from the Temporary Restraining Order dated August 2, 2010 (the "TRO"), and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of Mexicana, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or

---

[1] Capitalized terms not otherwise defined herein, have the meanings ascribed to them in the Motion.

further notice is necessary; and upon the record at the hearing on the Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED that neither the TRO nor any prohibition set forth therein shall apply to any of the Aircraft or Leases or any attempts of any of the Terminating Parties to take possession of any of the aircraft, engines, component parts, and records identified on Exhibit A to this Order, including through litigation commenced inside or outside of the United States including, but not limited to, the proceeding pending in the United States District Court for the Southern District of New York entitled *Wells Fargo Bank Northwest, N.A. and Marco Aircraft Leasing Limited, N.A. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 10 Civ. 5780 (RJS).; and it is further

ORDERED that Mexicana, the Foreign Representative and the Terminating Parties are authorized to take all actions necessary to effectuate this Order.

Dated: New York, New York
       August___, 2010

---
UNITED STATES BANKRUPTCY JUDGE

# 9680766_v2

# EXHIBIT A

(i) one Airbus A319-100 aircraft bearing manufacturer's serial number 4204, of which Wells Fargo is Lessor, which includes its respective Engines, Parts, and Aircraft Documentation (as those terms are defined in the governing lease) (hereinafter, the "4204 Aircraft);

(ii) one Airbus A319-100 aircraft bearing manufacturer's serial number 4127, of which Wells Fargo is Lessor, which includes its respective Engines, Parts, and Aircraft Documentation (as those terms are defined in the governing lease) (hereinafter, the "4127 Aircraft);

(iii) one Airbus A319-100 aircraft bearing manufacturer's serial number 4254, of which Wells Fargo is Lessor, which includes its respective Engines, Parts, and Aircraft Documentation (as those terms are defined in the governing lease) (hereinafter, the "4254 Aircraft);

(iv) one Airbus A320-200 aircraft bearing manufacturer's serial number 0361, of which Wells Fargo is Lessor, which includes its respective Engines, Parts, and Aircraft Documentation (as those terms are defined in the governing lease) (hereinafter, the "0361 Aircraft);

(v) one Engine that was originally on Aircraft 1612, but was not returned with Aircraft 1612 as well as the Aircraft Documentation for Aircraft 1612 (as that term is defined in the governing lease for Aircraft 1612);

(vi) One IAE V2500-A1 aircraft bearing engine serial number V0029, which AeroTurbine had leased to Mexicana, which includes the Engine Documentation (as that term is defined in the Aircraft Engine Lease Agreement dated December 18, 2009) (hereinafter, "ESN V0029");

(vii) One General Electric CF34-3B1 engine bearing manufacturer's serial number 872318, which AeroTurbine leased to Mexicana Inter S.A. de C.V., which includes its respective Components and Engine Documentation (as those terms are defined in the Lease Supplement No. 1 dated April 8, 2009 in accordance with that General Terms Engine Lease Agreement, dated March 31, 2009, collectively as amended, modified, supplemented, and assigned from time to time (hereinafter, "ESN 872318"); and

(viii) CRJ 200 Rotable Components (hereinafter, the "Component Parts"), which AeroTurbine had leased to Mexicana, which includes all the parts included in Schedule 1 to the Agreement for the Lease of CRJ 2000 Rotable Components dated April 8, 2009, as amended, modified, supplemented, and assigned from time to time (the "Components Parts Lease") and required Documentation (as that term is defined in the Components Parts Lease).

# 9681076_v1