LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Westport, Connecticut 06880
(203) 222-0885
(203) 226-8025 (facsimile)
Stephen H. Gross, Esq.
Robert Laplaca, Esq.
sgross@levettrockwood.com
rlaplaca@levettrockwood.com

*Attorneys for EAST Trust-Sub 12*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | Case No. 10-14182 (MG) |
| Debtor in a Foreign Proceeding | |

**EMERGENCY MOTION OF EAST TRUST-SUB 12
FOR RELIEF FROM TEMPORARY RESTRAINING ORDER,
FOR A DETERMINATION THAT A CERTAIN LEASE AGREEMENT IS
TERMINATED, FOR A DETERMINATION THAT THE AUTOMATIC STAY
IS NOT APPLICABLE IF AN ORDER IS ENTERED RECOGNIZING THE
CONCURSO PROCEEDING AS A FOREIGN MAIN PROCEEDING AND
OBJECTION TO THE IMPOSITION OF A PRELIMINARY INJUNCTION**

EAST Trust-Sub 12 ("EAST"), hereby files its (a) emergency motion for entry of an order, substantially in the form of the Order attached hereto as Exhibit A (i) granting relief from the Second Amended Order to Show Cause with Temporary Restraining Order entered by this Court on August 5, 2010 (the "TRO") pursuant to paragraphs 12 and 16 of the TRO, (ii) declaring that a certain lease agreement between EAST and Debtor was validly terminated by EAST prior to the filing of Debtor's petition in Mexico and (iii) declaring that to the extent this Court enters an order recognizing the Concurso Proceeding (as defined below) as a "foreign

main proceeding," the automatic stay is inapplicable to EAST and its aircraft and (b) objection to the Debtor's motion for a preliminary injunction (the "Motion"), and respectfully represents as follows:

### PRELIMINARY STATEMENT

1. EAST is in a similar position as the ILFC Group[1], which filed a motion for identical relief in this proceeding (docket nos. 49 and 71) (the "ILFC Group's Emergency Motion"). Like the members of the ILFC Group, EAST was the lessor of a certain aircraft to the debtor Compania Mexicana de Aviacion, S.A. de C.V. ("Mexicana"). The operative EAST lease agreement also provided for return of the aircraft in the event of default by Debtor. Prior to the commencement of its bankruptcy proceeding in Mexico, as the result of Mexicana's pre-petition defaults under the operative lease agreement, EAST served Mexicana with a Notice of Cancellation and Payment Demand, terminating the lease and obligating Mexicana to return the aircraft. Accordingly, Mexicana has no right to retain possession of the aircraft, the lease has been terminated pre-petition, the automatic stay is inapplicable to EAST and its aircraft, and Debtor is not entitled to a preliminary injunction enjoining EAST from exercising its valid rights to return of the aircraft.

2. Because this motion requests similar relief based on similar grounds as other parties in this proceeding, such that there should be no prejudice to the debtor or any other parties in interest, EAST respectfully requests that the Court consider this Motion along with the other similarly positioned motions at the hearing on debtor's Motion.

---

[1] International Lease Finance Corporation, Whitney Ireland Leasing Limited, and Calliope Limited.

## BACKGROUND

### The Concurso Proceeding

3. On August 2, 2010, Mexicana voluntarily filed a petition for commencement of a corporate reorganization proceeding in the Mexican Court under Mexico's *Ley de Concursos* (the "Concurso Proceeding).

### The Chapter 15 Filing

4. On August 2, 2010 (the "Petition Date"), Maru E. Johnson (the "Foreign Representative"), in her capacity as the foreign representative of Mexicana, filed a petition in this Court under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code") for recognition of Mexicana's corporate reorganization "Concurso Proceeding" as a "foreign main proceeding."

5. That day the Foreign Representative also filed an ex parte application for an order granting provisional relief and injunction and scheduling a hearing. In this application, the Foreign Representative seeks recognition of the Concurso Proceeding as a "foreign main proceeding," recognition of her as a "foreign representative," and a TRO and preliminary injunction providing that the automatic stay of Section 362 of the Bankruptcy Code applies to this proceeding until the time an order is entered by this Court recognizing the Concurso Proceeding as a "foreign main proceeding."

6. On August 2, 2010, this Court entered the TRO, providing, among other things, that "the protections of section 362 of the Bankruptcy Code appl[y] to Mexicana and its assets in the United States."

3

### EAST's Aircraft and Lease

7.  EAST is the owner and a lessor of a certain aircraft to Mexicana.

8.  By Aircraft Lease Agreement dated September 28, 2001 entered into between EAST, as Lessor, and Mexicana, as Lessee, as amended, (the "Lease"), EAST agreed to lease to Mexicana one Airbus A320-231 aircraft bearing manufacturer's serial number 347 equipped with two IAE V2500-A1 engines bearing manufacturer's serial numbers V0240 and V0315 (collectively, the "Aircraft"). (*See* accompanying Declaration of Brian DiSanto ("DiSanto Decl."), ¶ 3 and Exhibit A.)

9.  Pursuant to Article 17.1 of the Lease, the parties agreed that "THIS LEASE SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (INCLUDING ALL MATTERS OF CONTSTRUCTION, VALIDITY AND PERFORMANCE, BUT EXCLUDING CONFLICTS OF LAW PRINCIPLES OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW)." (*See* DiSanto Decl., Ex. A. Art. 17.1.)

10. On August 12, 2009, EAST and Mexicana entered into a Transaction Agreement, with respect to the Lease, executed before the Honorable Center of Alternative Justice of the Superior Tribunal of Justice of the Federal District of Mexico on August 19, 2009, as amended by that certain Amendment No. 1 to the Transaction Agreement dated as of April 23, 2010, entered into between the parties, before the Honorable Center of Alternative Justice of the Superior Tribunal of Justice of the Federal District of Mexico on April 23, 2010 (as further amended, modified, assigned, and supplemented from time to time, collectively, the "Transaction Agreement"). The Transaction Agreement recites that there had been Events of Default under

the Lease resulting from Mexicana's failure to make certain payments to EAST and provides terms for the continuing of the leasing arrangement. (*See* DiSanto Decl., ¶ 5 and Ex. B.)

11.     In connection with this Transaction Agreement, on August 12, 2009, EAST and Mexicana also entered into an Aircraft Lease Extension and Amendment Agreement No. 2, providing for certain modifications of the Lease, which was later modified by a Letter Agreement dated April 23, 2010 (the "Extension Agreement"). (*See* DiSanto Decl., ¶ 6 and Ex. C.)

12.     Under the terms of the Lease and Transaction Agreement, an Event of Default includes, among other things, Mexicana's failure to timely pay the amounts due thereunder. (*See* DiSanto Decl., Ex. A, Lease, Art. 15.1(a) and Ex. B, Transaction Agreement, ¶¶ 3.2 and 4.)

13.     Under the express terms of the Lease, EAST has the right, upon an Event of Default, to immediate possession of the Aircraft and related equipment if Mexicana failed to pay its obligations under the Lease. Article 16.1(a) provides, in pertinent part, that upon an Event of Default, EAST may "by notice in writing to Lessee, accept the relevant repudiation and terminate the leasing of the Aircraft hereunder and demand that Lessee return the Aircraft, and Lessee shall, upon written demand of Lessor and at Lessee's expense, forthwith return the Aircraft to Lessor in the manner and condition required by, and otherwise in accordance with all of the provisions of, Clause 14 hereof as if the Aircraft were being returned at the end of the Term; …" (*See* DiSanto Decl., ¶ 9 and Ex. A, Lease, Art. 16.1(a).)

**Mexicana's Default**

14.     Mexicana has failed to pay EAST (i) Basic Rent in the amount of US$108,518.39 due and payable on June 3, 2010, (ii) Basic Rent in the amount of US$110,000.00 due and payable on July 6, 2010 and (iii) and Supplemental Payments in the amount of US$79,071.51

5

due and payable under the Lease (collectively, the "Past Due Rent Amounts"). As of July 29, 2010, the Past Due Amounts totaled US$297,589.90 (*See* DiSanto Decl., ¶ 9.)

15. In addition, Mexicana failed to pay EAST the payment under the Transaction Agreement in respect of the Indebtedness in the amount of US$21,122.47 due and payable on July 6, 2010, which also made the remaining Indebtedness under the Transaction Agreement, US$261,649.80, due and payable (together with the Past Due Rent Amounts, collectively, the "Past Due Amounts"). (*See* DiSanto Decl., ¶ 10.)

**Termination of the Lease**

16. On July 29, 2010, EAST served upon Mexicana a NOTICE OF CANCELLATION AND PAYMENT DEMAND (the "Notice of Cancellation"), based upon Mexicana's failure to make required payments under the terms of the Lease and Transaction Agreement. Pursuant to the Notice of Cancellation, the Lease was terminated and EAST became entitled to full payment of the Past Due Amounts along with return of the Aircraft. (*See* DiSanto Decl., ¶ 11 and Ex. D.)

17. On August 3, 2010, Mr. DiSanto and Bruce Hogarth of Macquarie AirFinance visited with Ricardo Baston and Jorge Jacome of Mexicana at the airline's headquarters in Mexico City. At the meeting, Mr. DiSanto demanded immediate redelivery of the Aircraft pursuant to the Notice of Cancellation. Although the Lease was terminated prior to the Concurso Proceeding, the team from Mexicana rejected this request and deferred to Concurso Proceeding. (*See* DiSanto Decl., ¶ 12.)

18. Pursuant to the terms of the Lease, Transaction Agreement and Extension Agreement, the parties agreed to the jurisdiction of the courts of the Southern District of New

York. (*See* DeSanto Decl., Ex. A, Lease, Art. 17.6; Ex. B, Transaction Agreement, ¶ 8.2; and Ex. C, Extension Agreement, ¶ 7.2.)

## JURISDICTION AND VENUE

19.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

## RELIEF REQUESTED

20.     By this motion and pursuant to section 105(a) of the Bankruptcy Code, EAST seeks entry of an order (a) granting EAST relief from the TRO, (b) finding that any preliminary injunction that may be issued by this Court shall not apply to EAST and its Aircraft, (c) declaring that the Lease was validly terminated by EAST prior to commencement of the Concurso Proceeding and (d) declaring, in the instance that an order is entered recognizing the Concurso Proceeding as a "foreign main proceeding," that the automatic stay does not apply to EAST and its Aircraft.

## BASIS FOR RELIEF

21.     As set forth in the accompanying Declaration of Carlos Alberto Sierra Navarro ("Sierra Decl."), Mexican counsel for EAST, the Lease was terminated according to its terms pre-petition in accordance with Mexican law. (*See* Sierra Decl., ¶¶ 15-16.) As explained in this Declaration, in accordance with Articles 12, 13, 14 and 15 of the *Código Civil Federal* (Federal Civil Code) of México, the choice of New York law to govern the Lease which is contained in Section 17.1 of the Lease will be upheld as a valid choice of law in any binding any action in the courts of Mexico. (Sierra Decl., ¶ 14.)

7

22. Further, the Cancellation Notice is in proper form and has been properly notified in accordance with Mexican procedural law in order to terminate the Lease in accordance its terms and in accordance with the governing law of the Lease as provided for in Section 17.1 thereof. The Cancellation Notice will be recognized by any Mexican court to validly terminate the Lease under New York law with effect as of the date thereof in accordance with the provisions of Article Articles 12, 13, 14 and 15 of the Federal Civil Code. (*See* Sierra Decl., ¶ 15.)

23. Moreover, under New York law, a commercial lease is validly terminated by proper service of a notice upon default, as provided in the applicable lease documents. When a freely-negotiated agreement provides terms for termination, the "right to terminate is absolute." *Alco Standard Corp. v. Schmid Brothers, Inc.*, 647 F. Supp. 4, 7 (S.D.N.Y. 1986) (citations omitted) (applying New York law); *see also In re Family Showtime Theaters, Inc.*, 67 B.R. 542, 550 (Bankr. E.D.N.Y. 1986) (holding that termination provisions in a commercial lease negotiated at arms-length gives lessor a "valid contract right" to terminate lease according to its terms). As explained by the Second Circuit, under New York law, "the power to terminate a continuing contract because of a particular breach of that contract is a power of election ... When a contract is breached during its term, the non-breaching party has a choice presented to him of continuing the contract or of refusing to go on." *Apex Pool Equip. Corp. v. Lee,* 419 F.2d 556, 562 (2d Cir. 1969). The New York Uniform Commercial Code provides that when a lessee fails to make payments when due, the lessee is in default and the lessor may cancel the lease and take possession of the goods previously delivered. N.Y.U.C.C. § 2-A-523(1). The UCC also provides that "Cancellation occurs when either party puts an end to the lease contract for default by the other party." N.Y.U.C.C. § 2-A-103(1)(b).

24. Further, under well settled bankruptcy law, a lease validly terminated pursuant to its notice requirements prior to a bankruptcy petition does not become property of the estate and the automatic stay is inapplicable. *Baker v. Latham Sparrowbuch Assocs.*, 72 F.3d 246, 252 (2d Cir. 1995). *See also* 3 *Collier on Bankruptcy*, ¶ 362.03[5][a] ("if a contract or lease terminated prior to the commencement of a [bankruptcy] case, it will not become property of the estate, and the other party may treat the agreement as terminated").

25. Considering the above: (a) since the Cancellation Notice was validly delivered to Mexicana on July 29, 2010, which is prior to the commencement of any insolvency proceedings of Mexicana, and certainly before any resolutions or cautionary provisions or stays were issued by any district court or by any United States court in respect thereof, (b) considering also that no association, partnership or any other legal relationship beyond the mere commercial relationship established solely under the Lease existed between Mexicana and EAST, and (c) considering as well that Mexicana has no ownership or economic interest of any kind in respect to the assets that were subject matter of the Lease, the assets in question have been removed from the right of legal possession of Mexicana by virtue of the lease termination notices and should not in any form be considered to be a part of its bankruptcy estate. (*See* Sierra Decl., ¶ 16.)

26. As a result, Mexicana has no legitimate right to possess the Aircraft and the Aircraft is not property of the estate or subject to the automatic stay.

27. EAST and the ILFC parties are similarly situated – each with an aircraft lease with the Debtor that was terminated pre-petition. Therefore, for the convenience of the court and to avoid unnecessary repetition, EAST also incorporates the arguments asserted by ILFC in its Emergency Motion (docket no. 49) and Supplemental Memorandum of Law (docket no. 71), and

respectfully requests that the Court waive the requirement for filing a separate memorandum of law.

## NOTICE

28.     Notice of this motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) Mexicana, and (iii) all parties required to be given notice under Bankruptcy Rule 2002(q)(1) of which EAST is currently aware. EAST submits that no other or further notice need be provided.

## NO PRIOR REQUEST

29.     No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, EAST requests that this Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested herein and granting EAST such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Stephen H. Gross
Stephen H. Gross, Esq.
Robert Laplaca, Esq.
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Westport, CT 06880
Telephone: (203) 222-0885
Facsimile: (203) 226-8025
sgross@levettrockwood.com
rlaplaca@levettrockwood.com

Attorneys for EAST Trust-Sub 12

192569