GERSTEN SAVAGE LLP
Paul Rachmuth (PR1566)
600 Lexington Avenue
New York, New York  10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192
prachmuth@gerstensavage.com

Counsel to Aviation Port
Services, L.L.C.

Hearing Date:  August 16, 2010
10:00 am

Objection Deadline:  August 13, 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>COMPANIA MEXICANA DE AVIACION, S.A. DE C.V.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 10-14182 |

## LIMITED OBJECTION TO PRELIMINARY INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE, MOTION FOR (A) RELIEF, OR (B) DETERMINATION THAT 362 IS INAPPLICABLE

Aviation Port Services, L.L.C. ("APS") by and through its counsel, Gersten Savage, LLP, hereby objects in a limited manner to preliminary injunctive relief (the "Injunctive Relief") sought by the putative foreign representative of Compania Mexicana de Aviacion, S.A. de C.V., (the "Debtor") and respectfully states as follows:

A.   Introduction

1.   APS is a merchant that, pursuant to a contract, supplies services to the Debtor at specified locations and times for payment at a future date.  Though the Debtor has defaulted on its payment obligations under the contract, it insists that APS continue to provide it services and continue to extend it credit.  APS cannot afford to continue supplying the Debtor with services without receiving payment or adequate assurance that payment for postpetition services will be made.

2. Both the equities of this case and bankruptcy law preclude the Debtor from forcing APS to do so.

B. Background

3. APS and the Debtor (the "Parties") are parties.

4. On or about August 29, 2008 APS and the Debtor (the "Parties") entered into a Standard Ground Handling Agreement (the "SGHA") documented on the IATA SGHA Version 2004 Form, consisting of the standard form and an Annex B specifying terms (collectively, the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit "A". Pursuant to the Agreement, APS would provide ground handling services (the "Services") to the Debtor at Oakland International Airport ("OAK") at specified times in the future; when the Debtor's aircraft arrived/departed OAK.

5. At the time the Agreement was entered, it was expected that the Debtor would be operating four flights per week through OAK. Accordingly, based on the terms of the Agreement, APS was to provide the Debtor with approximately $30,000 per month in services.

6. The Agreement requires the Debtor to pay open invoices on twenty-five day terms. Accordingly, based on the expected flight operations, APS was expected to extend the Debtor approximately $30,000 in credit. The Agreement also grants either party the right to cancel the Agreement in the event the other party becomes insolvent or files a bankruptcy petition.

> Either Party may terminate this Agreement and its Annexes at any time if the other Party becomes insolvent, makes a general assignment for the benefit of creditors, or commits an act of bankruptcy or if a petition in bankruptcy or for its reorganization or the readjustment of its indebtedness be filed by or against it, provided the petition is found justified by

        the appropriate authority, of a receiver, trustee or liquidator of all or substantially all of its property be appointed or applied for.
Agreement, 11.8

7. Since entering the Agreement, the Debtor has increased its operations at OAK. It has also fell significantly behind in paying APS.

8. As of the July, 2010, the arrears owed to APS were approximately $197,000.

9. In the many conversations and correspondences between APS and the Debtor, the Debtor acknowledged its payment default and promised pay the arrears.

10. Unfortunately, though many promises of payment given, the payments were not made before the Debtor filed the Mexican concurso proceeding and this petition (collectively, the "Bankruptcy Proceedings") under chapter 15 of 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code").

11. After the Debtor filed the Bankruptcy Proceedings, its representative contacted APS and informed it that the Debtor will be requiring APS's continued performance under the Agreement; including requiring APS to continue extending terms to the Debtor.

12. Based on the wide-spread media reports, there appears to be a real possibility that the Debtor is now, or soon will be, administratively insolvent. It also appears that the Debtor will be forced to cease operations. Both of these possibilities equate to a real risk that the Debtor will not pay for the post-petition work being demanded.

### C. Limited Objection to Preliminary Injunctive Relief

13. The Injunctive Relief sought by the Debtor is not appropriate; especially as it applies to APS and similarly situated creditors. Bankruptcy Code Section 1522 requires the Debtor demonstrate that APS and other similarly situated creditors are "sufficiently protected". That showing has not been made and, given the circumstances, cannot be made.

14. The Injunctive Relief includes extension of Bankruptcy Code Section 362 to this chapter 15 case. Absent a determination that the Agreement is a Forward Contract (See Section E, below), Section 362 prevents contract counterparties from terminating or unilaterally altering the terms of a prepetition contract. The effect the Injunctive Relief, therefore, will be to prevent APS from cancelling the Agreement and require APS to continue extending terms to the Debtor.

15. APS is a small ground handling company. The loss of its prepetition receivable from the Debtor has put a great strain on the company. Whether that loss is temporary, permanent, partial or full remains to be seen.

16. It cannot now afford continuing to extend additional credit to the Debtor; especially with no assurances that such additional credit will ever be repaid. Such additional losses will injure or even bankrupt APS and other smaller service providers to the Debtor.

17. The relief granted the Debtor in the Temporary Restraining Order and sought in the Preliminary Injunction is not automatic. Rather, it is proceeding under the Court's general equitable powers pursuant to sections 105(a) and 1519 of the Bankruptcy Code. However, the Debtor has made no showing that the relief sought **as**

**it relates to APS and other similarly situated smaller service providers** is "urgently needed to protect the assets of the debtor or interests of creditors." 11 U.S.C. 1519(a).

18. APS has indicated to the Debtor that it is willing to continue providing service, but can only do so if it is assured of payment. Accordingly, the relief sought - forcing APS to abide by the original terms of the Agreement - is not "urgently needed".

19. Not only has the Debtor failed to show that the relief is necessary as it pertains to APS and others, the relief sought may drive APS (and probably others) to or past the brink of extinction; a result that also cannot be "urgently needed".

20. Further, as APS and others are being forced to extend postpetition credit to the Debtor without assurances that such credit will be repaid – a reasonable request given the Debtor's apparent financial condition – the provisions of Bankruptcy Code 1522 are not satisfied.

D. <u>Alternate Relief Sought – Relief from the Automatic Stay</u>

21. For the reasons stated above, in the event this Court grants the Debtor the Injunctive Relief, APS seeks relief from the imposition of Bankruptcy Code Section 262 so that it may terminate that portion of the Agreement requiring APS to provide service in advance of payment.

E. <u>Alternate Relief Sought – Determination that the Stay is Inapplicable</u>

22. The Agreement is a Forward Contract and APS is a Forward Contract Merchant as those terms are defined by the Bankruptcy Code. Accordingly, Bankruptcy Code Section 556 permits APS to exercise its termination rights under the Agreement notwithstanding Bankruptcy Code Section 362.

23. Bankruptcy Code 556 provides "[t]he contractual rights of a ... forward contract merchant to cause the ... termination ... of a ... forward contract because of a condition of the kind specified in section 365(e)(1) of this title ... shall not be stayed, avoided or otherwise limited by operation of any provision under this title." (11 U.S.C. §556).

24. The Bankruptcy Code defines the term Forward Contract Merchant to include any company in the business of providing services pursuant to a forward contract:

> ... an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.
>
> 11 U.S.C. §101(26)

25. The Bankruptcy Code defines a Forward Contract to include any contract for services to be provided in the future that are the subject of the forward contract trade.

> The Term "forward contract" means –
> (A) a contract ... for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract was entered into...
> * * *
>
> 11 U.S.C. §101(25)

26. Bankruptcy Code Section 761 refers to the Commodity Exchange Act (7 U.S.C. §§1 *et seq.*) for the definition of terms including "commodity". The Commodity Exchange Act defines "commodity" to include "... all services, rights, and

interests in which contracts for future delivery are presently or in the future dealt in." (7.U.S.C. §1a).

27. APS is in the business of providing ground services and the Agreement obligates APS to provide such services in the future. Accordingly, the Agreement is a Forward Contract. As such, Bankruptcy Code Section 362 does not stay APS's contractual right to terminate the contract in response to the Debtor's Bankruptcy Proceedings.

F. Conclusion

28. APS, a small service provider to the Debtor, has already been injured by the Debtor's insolvency. Requiring it to sustain further losses would be inequitable and unwarranted under the circumstances. It therefore objects to entry of the Injunctive Relief to the extent such relief would require APS's continued performance under the Agreement without receiving advance payment or adequate assurance that it will be paid for the services to be provided, or in the alternative, seeks relief from the stay sought to be imposed by the Injunctive Relief or a determination that the stay would not prevent APS from terminating the Agreement by its terms.

WHEREFORE APS respectfully request this Court either (a) deny the application of the Injunctive Relief sought by the Debtor as it pertains to APS, or in the alternative, (b) grant APS relief from Bankruptcy Code Section 362 and allow it to terminate that portion of the Agreement requiring it to provide service in advance of payment, or (c) enter an Order determining that, not withstanding the granting of the

Injunctive Relief, APS is not precluded from terminating the Agreement by its terms, and

(d) such other and further relief as this Court deems just and proper.


Dated: New York, New York        GERSTEN SAVAGE LLP
August 13, 2010

By: /s/ Paul Rachmuth
    Paul Rachmuth (PR1566)

600 Lexington Avenue
New York, New York 10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192
prachmuth@gerstensavage.com

Counsel to
Aviation Port Services, L.L.C.