DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
William C. Heuer, Esq.
William H. Schrag, Esq.
*wheuer@duanemorris.com*
*wschrag@duanemorris.com*

Counsel to the Foreign Representative

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | Case No. 10-14182 (MG) |
| Debtor in a Foreign Proceeding. | |

### DECLARATION OF DEBTOR'S MEXICAN COUNSEL PURSUANT TO 28 U.S.C. §1746

I, María Fernanda Alvarado Villazón, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a lawyer in the Mexico-based law firm of Gastelum Abogados, located at Bosques de Alisos 45-B, P.B., colonia Bósques de las Lomas, 05120 Mexico City, Federal District, Mexico. I hereby submit this declaration (the "Declaration") in opposition to the Order to Show Cause with Temporary Restraints by Plaintiffs.

2. I am counsel to Compañía Mexicana de Aviación, S.A. de C.V. ("Mexicana") in the voluntary judicial reorganization proceeding (the "Business reorganization Proceeding") filed by Mexicana in the Eleventh District Court for Civil Matters for the Federal District, Mexico (the "Mexico Business Reorganization Court"), on August 2, 2010, as a foreign main proceeding pursuant to section 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. 101, *et seq.*

3. Except as set forth below, I have personal knowledge of the matters set forth in this Declaration.

4. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

5. In this Declaration, after describing my background and qualifications with respect to Mexico's Ley de Concursos Mercantiles, as officially published in the Diario Oficial de la Federacion on May 12, 2000 (the "Mexican Business Reorganization Act"),[1] I provide a description of the general structure of those provisions of the Mexican Business Reorganization Act that specifically relate to this Court's consideration of the Chapter 15 Petition. Where relevant, I describe the status of Mexicana as the subject of a voluntary judicial reorganization proceeding in Mexico pursuant to the Mexican Business Reorganization Act.

6. In preparing this Declaration, I have reviewed the (i) the Mexican Business Reorganization Act[2] as it relates to Chapter 15 of the Bankruptcy Code and the claims of the U.S. based creditors in the Business Reorganization Proceeding; and (ii) the Chapter 15 petition; (iii) all documents submitted in support of the Chapter 15 petition.

## Background and Qualifications

7. Pertinent aspects of my legal background are as follows: I earned my law degree from Universidad Iberoamericana in 2005. I obtained my license to practice law from Dirección General de Profesiones of the Secretaría de Educación Pública (Ministry of Education) in 2005. Since obtaining my law degree, I have been a practicing attorney in Gastélum Abogados and in Inmobiliaria Fadesamex, S.A. de C.V., (part of MARTINSA-FADESA's group) as General Counsel.

---

[1] The Spanish version of the Act can be found on the Internet website of the Mexican Federal Institute of Business Reorganization Specialists (IIFECOM), at http://ifecom.cjf.gob.mx/PDF/LCMyND/8.pdf. On December 27, 2007, amendments to the MBRA were published in the Diario Oficial de la Federación ("Federal Official Gazette" or "DOF"), which became effective as of December 28, 2007.

[2] The Spanish version of the Business Reorganization Act can be found on the Internet website of the Mexican Federal Institute of Business Reorganization Specialists, at httpp://ifecom.cjf.gob.mx/PDF/LCMyND/8pdf. On December 27, 2007, amendments to the Mexican Business Reorganization Act were published in the Official Gazette, which became effective as of December 28, 2007.

8. As part of my practice, I have been involved in several major insolvency litigation proceedings pursuant to the Mexican Business Reorganization Act (Maquiladora de Refrescos y Aguas Embotelladas, S.A. de C.V.; Embotelladora Central Chiapaneca, Embotelladora Tacaná, S.A. de C.V.; Sabores y Concentrados, S.A. de C.V.; Grupo Embotelladores del Sureste, S.A. de C.V.; Plaza del Zapato, S.A. de C.V.; Biotanic, S.A. de C.V.; and Consorcio Aviacsa, S.A. de C.V.), which were key for certain Mexican Tributary Administration's to issue internal official letters that would enable them to grant debtors under the Mexican Business Reorganization Act, similar agreements as those granted by its creditors regarding the terms and conditions for the payment of the debt.

9. I have also been involved in a number of major insolvency litigation proceedings pursuant to the former Ley de Quiebras y Suspensión de Pagos (Mexican Bankruptcy and Suspension of Payments Act), such as those of Altos Hornos de México, S.A. de C.V., Gupo Acerero del Norte, S.A. de C.V., and Grupo Gerco, S.A. de C.V.

10. I have been an assistant professor in the Universidad Iberoamericana.

11. As of August 20, 2010, I have represented and advised Mexicana with respect to the Mexicana's Mexican insolvency and business reorganization in the Concurso Mercatil Proceeding filed on August 2, 2010.

12. Since August 20, papers submitted by Mexicana in the Concurso Proceeding have been drafted by me or under my supervision.[3]

## THE MEXICAN BUSINESS REORGANIZATION ACT

### A. Overview of the Mexican Business Reorganization Act

13. The Mexican Business Reorganization Act (*"Ley De Concursos Mercantiles"*), is a federal law that went into effect on May 15, 2000, which repealed the 1943 law governing suspension of payments and Bankruptcy (*"Ley de Quiebras y de Suspensión de Pagos"*). The Mexican Business Reorganization Act is aimed at maximizing assets value and encourages the rehabilitation of insolvent and financially distressed viable business and the orderly

---

[3] The information concerning Mexicana's Concurso Mercantil Proceeding in Mexico is drawn either from public documents or from my personal knowledge. Where the overview contained in this Declaration is concerned, I have not relied on confidential attorney-client communications or on confidential documents.

liquidation of unviable ones. In general, the Mexican Business Reorganization Act incorporates modern international practices, including the Principles and Guidelines for Effective Insolvency and Credit Right System (United Nations Commission on International Trade Law).

14. Among the salient features of the Mexican Business Reorganization Act are: (i) it confers original and exclusive jurisdiction over reorganization cases and proceedings arising under such cases to the federal district court judges; (ii) it creates the Federal Institute of Bankruptcy Specialists (*"Instituto Federal de Especialistas de Concursos Mercantiles"*), which is responsible for supervising insolvency administrators (examiners, conciliators and trustees) establishing adequate rules of reorganization procedure and resolving extrajudicial processes affecting reorganization cases; (iii) it facilitates the timely and transparent administration and disposition of the assets of the estate wherever located; (iv) it provides equal access to the court and participation in the distribution of the estate to both local and foreign creditors; and (iv) it facilitates cross-border insolvency proceedings by establishing adequate rules of jurisdiction, recognition of foreign judgments and cooperation and assistance among courts in different countries.

15. Pursuant to its preface, the Mexican Business Reorganization Act has the principal purpose of creating a modern regulator framework that allows the conservation of the debtors that pass through financial and economic crisis.

16. The proceeding has three stages. The first stage lasts on average three months and it is addressed to determine if the debtor should be declared insolvent. The second stage should last no longer than one year and it is addressed to reach a

reorganization of the debtor, and the third stage is bankruptcy if stage two, reorganization, is not successful.

17. Stage one is not optional. Stage two must be followed unless the debtor requests the court to skip the reorganization stage to go directly to bankruptcy.

18. The Mexican Business Reorganization Act expressly recognizes that it is *"in the public interest to preserve companies and to prevent a general default in payment from risking their failure and the failure of other companies with which they have dealings."* See id. At Art. 1. To that end, the Mexican Business Reorganization Act establishes a reorganization process similar to that which exists under Chapter 11 of the Bankruptcy Code in the United States.

19. The Mexican Business Reorganization Act relates to the adjustment of debt or insolvency of a company, and in the proceeding the company's assets and affairs are subject to control or supervision by the Mexican Court, for the purpose of reorganization or liquidation.

20. Cases brought under the Mexican Business Reorganization Act are commenced with the filing of an insolvency petition by the debtor, by a creditor or by the attorney general ("*Ministerio Público*"). See id. At Art. 21. The petition is filed with the Mexican Federal District Court in the jurisdiction in which the debtor has its primary place of business. See id. At Art. 17. As Mexicana has its primary place of business in Mexico City, on August 2, 2010, Mexicana filed a voluntary insolvency petition was filed with the Federal District Court for Civil Matters of The Federal District.

21. On August 4, 2010, the insolvency petition filed by Mexicana was admitted by the Eleventh District Court for Civil Matters for the Federal District (the "<u>Mexican Court</u>").

5
DM2\2410959.2

22. In order to determine whether the debtor meets the eligibility requirements to be declared commercially insolvent required under the Mexican Business Reorganization Act, a court-appointed Visitador examines the company's books and records. *See id.* At Arts. 10, 29-40.

23. Based on the report submitted by the Visitador, and considering the contents of the insolvency petition filed by the debtor, and the statements made by the debtor on the report filed by the Visitador, the Court will issue a reorganization judgment providing that the petition will be granted and the debtor admitted to the bankruptcy reorganization process. *See id.* At Art.

24. The debtor will have a term of 10 business days in which to submit in writing to the Mexican Court its allegation or comments regarding the Visitador's report.

25. In the Mexicana insolvency proceedings the Visitador completed his analysis, and on August 31st, 2010 submitted his report to the Court confirming that Mexicana complied with the eligibility requirements set forth in the Business Reorganization Act. On September 3rd, 2010, Mexicana filed its statement in connection with the Visitador's report.

26. If the Court decides to grant the petition and treat the case as a business reorganization, (i) a stay on all enforcement proceedings on assets of the debtor takes place, including proceedings in favor of secured creditors; (ii) the debtor must suspend the payment of obligations acquired before the judgment not deemed in the ordinary course of business of the company; and (iii) except for the secured credits up to the value of their collateral, all other debts cease to accrue interest judgments. *See id.* at Art. 43, §§ IV; A

27. If the debtor is declared commercially insolvent, the case will then enter a conciliatory stage and a conciliador ("Conciliator") will be appointed. *See* id. At Art. 43, §§

DM2\2410959.2

iv, v. The conciliation stage is analogous to what I understand to be the "exclusivity" period under U.S. bankruptcy law. The conciliatory stage is activated in order for the debtor and its acknowledged creditors to be in a position to reach an agreement regarding the terms and conditions according to which the debtor will pay its debts (the "Reorganization Agreement").

28. The Conciliator has two main roles: to carry out the proceedings for the acknowledgment and ranking of the claims and to negotiate with the parties a restructuring agreement. *See id.* At Arts. 148-151. So long as the debtor remains in control of its business, the Conciliator is empowered to monitor the accounting and any transactions carried out by the Merchant. *See id.* At Art. 75. In addition, the Conciliator is empowered to (i) accept or reject contracts; (ii) take on additional debt; and (iii) permit the sale of post-petition assets outside the ordinary course of business. *Id.* The Conciliator is further empowered to determine which payments are "deemed necessary" without needing the prior approval of the court and to ask the court to remove and replace the management of the debtor. *See id.* At Art. 81.

29. On September 6th, 2010, the Mexicana reorganization judgment was issued and consequently the conciliation stage has begun.

30. The Mexican Ministry of Communications and Transportation ("SCT") appointed José Gerardo Badin Cherit as Conciliator, and on September 6th, 2010, he accepted his designation.

31. The Mexican Ministry of Communications and Transportation also appointed Francisco Javier Christlieb Morales as administrator, and he also accepted his appointment on September 6th, 2010.

32. The initial term that the parties have to reach and execute the Reorganization Agreement is 180 calendar days after the publications of the judgment have been made, which under certain circumstances may be extended by the court up to an additional 180 days. *See id*. At Art. 145. If, within that time, a Reorganization Agreement cannot be reached, the debtor will be directed by the court to enter into a liquidation proceeding.

33. If the debtor, with the assistance of the Conciliator, succeeds in formulating a Reorganization Agreement, the Conciliator must submit the agreement to the debtor's acknowledged creditors for their approval. In order to be considered valid, the Reorganization Agreement must be ratified by a majority of the common creditors, as further explained herein. *See id*. At Art. 157.

34. After receiving approval of the Reorganization Agreement from the debtor's creditors, the Conciliator must then submit the Reorganization Agreement to the court for its own review and approval. *See id*. at Art. 161. Creditors who object to the Reorganization Agreement are entitled to file objections. *See id*. at Art. 162. Following this period of comments and objections, the court may then approve the Reorganization Agreement if it finds that it meets all of the requirements set forth by the Mexican Reorganization Act and is not inconsistent with any public policy provision." *See id*. at Art. 164.

35. In contrast to the conciliatory stage, upon declaration of bankruptcy, management of the debtor is handled over to a síndico (Receiver) appointed also by the Federal Institute of Bankruptcy Specialists.

### B. The Specific Rules Provided in the Mexican Business Reorganization Act for Entities Operating Public Services Under a Concession Title

36. The Mexican Business Reorganization Act provides for special rules applicable to entities operating public services under a concession title, such as Mexicana. *See id.* at Art. 237-244. The Concurso Proceedings of the said entities will be subject to the laws, regulations, concession titles and other administrative rules governing the concession and the Mexican Business Reorganization Act will be also applied so long as it does not conflict or contradict the mentioned provisions. *See id.* at Art. 238.

37. The authority granting the concession title, in the Mexicana Reorganization Proceedings, the SCT, will have the sole power and discretion to propose the appointment, removal and substitution of the Conciliator and the Trustee and will supervise their activities. *See id.* at Art. 240.

38. When the SCT so considers it to be necessary to the continuity and safety of the public service, it may propose to the Judge the substitution of the directors or administrators of the entity and the appointment of the person that will continue its administration. *See id.* at Art. 241. The Judge shall immediately take any and all necessary actions to allow the appointed administrator to take possession of the entity's business. *See id.* Art. 241.

39. The Reorganization Agreement must be notified to the SCT, who may exercise a veto power during the time frame provided in article 162 of the Mexican Business Reorganization Act. *See id.* Art. 242.

40. Should the Reorganization Agreement or the liquidation of the entity provides for the transmission of the concession title, the transaction must be previously approved by the SCT. *See id.* Art. 244.

41. The participation of the SCT brings a great deal of certainty to the Concurso Proceeding of Mexicana.

DM2\2410959.2

### C. Pertinent Aspects of The Mexican Business Reorganization Act

*i. Provisions Providing for Just Treatment of All Holders of Claims Against or Interests in Mexicana's Property*

42. The Mexican Business Reorganization Act include several provisions which regulate assistance and interaction between Mexican courts and foreign courts in connection with procedures involving insolvency of a Mexican debtor who has an establishment or place of business abroad, and of a foreign debtor who has an establishment or place of business in Mexico.

43. The Mexican Business Reorganization Act provides for the just treatment of all holders of claims against or interests in the estate, including foreign creditors. Article 290 of the Mexican Business Reorganization Act specifically provides that "foreign creditors shall have the same rights as Mexican creditors in relation to the commencement of a proceeding in this State and the participation in it pursuant to this Act."

44. My interpretation of the Mexican Business Reorganization Act is that there are two classes of Foreign Proceedings (i) a Main Foreign Proceeding, defined as that which is brought against a debtor in a foreign State who has its principal place of business in that foreign State, and (ii) a Non-Main Foreign Proceeding, defined as that which is brought against a debtor who has its principal place of business in Mexico, but also has an establishment abroad.

47. The Mexican Business Reorganization Act defines "establishment" as a place of operations in which the debtor exercises, in a non-transitory manner, an economic activity with human resources and assets and services.

*ii. Protection Against Preferential or Fraudulent Disposition of Property*

48. The Mexican Business Reorganization Act contains several protections against the preferential or fraudulent disposition of property of a debtor's estate.

DM2\2410959.2

49. First, throughout the entire process of reorganization, the debtor's estate is subject both to (i) the review of the court and (ii) the supervision of the outside examiner (in the initial phase) and the independent Conciliator (in the conciliation phase). *See id.* at Art. 75.

50. Second, Chapter VI of the Mexican Business Reorganization Act (Articles 112-119) sets forth specific provisions prohibiting fraudulent acts against creditors, including fraudulent conveyances, self-dealing transactions, transactions with family members, and transactions with related business associations, if done without proper consideration. Finally, if the Conciliator suspects the presence of fraud or preferences, he may ask the supervising Court to remove the debtor's management. *See id.* at Art. 81.

   *iii.* *Provisions Pertaining to Priority and*
     *Distribution of Property or Proceeds from the Estate*

51. The Mexican Business Reorganization Act provides for the recognition and prioritization of creditor claims and for the distribution of estate assets to be made in accordance with that ranking. Articles 217 through 228 of the Mexican Business Reorganization Act set forth a comprehensive ranking of creditor priorities. Apart from the *sui generis* category of "singularly privileged creditors," creditor classes are categorized and ranked as "creditors with collateral," "creditors with special privileges," and "common creditors." *See id.* at Art. 217. Labor credits –other than those provided in section I of article 224 of the Mexican Business Reorganization Act[4]- and Tax credits will be paid after

---

[4] Labor credits referred to in section XXIII, letter A, of article 123 of the Mexican Constitution and its regulatory laws, including wages accrued two years before the judgment for business reorganization is rendered, will be paid first to any other credit provided in article 217 of the Mexican Business Reorganization Act. *See id.* at Art. 224-I.

11
DM2\2410959.2

"singularity privileged creditors" and "creditors with collateral" but before "creditors with special privilege". *See id.* at Art. 221.

52. The Mexican Business Reorganization Act provides that no payment may be made of a credit of one rank without previously having liquidated those from the previous ranks, according to the priority established for them.

53. The following are credits against the estate and will be paid in the order indicated below: (i) accrued wages and labor compensation for the period of two years prior to the date the petition for reorganization (preferential labor credits); (ii) those contracted for the management of the estate with the authorization of the Conciliator or Receiver, or where applicable, those contracted b the Conciliator; (iii) those contracted to cover ordinary expenses to secure the assets of the estate, its replacement, conservation and administration; (iv) those originating from in or out-of-court procedures for the benefit of the estate; and (v) the fees of the Visitador, Conciliator amd Receiver and the expenses incurred thereby, so long as the are strictly necessary for the performance of their duties and have been duly verified pursuant to the provisions issued by the Mexican Federal Institute of Specialists in Bankruptcy Proceedings.

55. Credits against the estate will have preference over all other credits; however, with regards to credits with collateral or special privilege, only the following credits against the estate will have preference: (i) the Preferential Labor Credits; (ii) the legal fees incurred for the defense or recovery of property subject to guaranty on which the privilege falls; and (iii) the necessary expenses for the replacement, conservation and sale of such property subject to guaranty or on which the privilege falls.

56. "Creditors with collateral" are defined as mortgagees and pledgees — the most common forms of security interests granted in Mexico. Creditors with collateral will

DM2\2410959.2

receive payment of their credits from the proceeds of the assets subject to their liens, with the absolute exclusion of other creditors, except for the aforementioned credits against the estate and singularly privilege credits; provide that if two or more creditors share the same guaranty, the order of payment of their credit will be determined based on applicable provisions regarding registration of their respective guaranty. *See id.* at Art. 219.

57. "Creditors with a special privilege" are those that according to the Commercial Code or operation of law, have a special privilege or a right of withholding, such as bailees and sellers in possession.

58. "Common Creditors" consist of all creditors other than those defined above. They collect proceeds of the estate on a *pro rata* basis without distinction as to dates. *See id.* at Art. 222.

    iv.    <u>Protection of Foreign Creditors</u>

59. Finally, the Mexican Business Reorganization Act expressly protects the rights of foreign creditors and ensures that their claims will be treated the same as those of domestic creditors. The Act provides that foreign creditors have exactly the same rights as Mexican creditors. *See id.* at Art. 290.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Mexico
       September 20, 2010

/s/ _____
María Fernanda Alvarado Villazón

DM2\2410959.2