UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| COMPANIA MEXICANA DE AVIACION, S.A. de C.V., | Case No. 10-14182 (MG) |
| Debtor in a Foreign Proceeding. | |

## ORDER PURSUANT TO
## 11 U.S.C. §§ 1504, 1515, 1517 AND 1520 RECOGNIZING
## FOREIGN REPRESENTATIVE AND FOREIGN MAIN PROCEEDING

Upon the Verified Petition for Recognition and Chapter 15 Relief (the "Petition")[1] seeking (a) recognition of the Foreign Representative as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code of the above-captioned debtors (collectively, the "Debtor"); and (b) recognition of the Debtor's reorganization proceedings under Mexican law currently pending before the District Court for Civil Matters for The Federal District, Mexico (the "Mexico Court" and "Concurso Proceeding"), as a foreign main proceeding pursuant to sections 1515 and 1517 of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and upon the hearing on the Petition and this Court's review and consideration of the Petition, the Foreign Representative Declaration [Docket No. 194], the Declaration of Mexican Counsel, Maria Fernanda Alvarado Villazon [Docket No. 195], and the evidence, testimony and argument presented at such hearing;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Petition.

[2] The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

1. This Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

2. Consideration of the Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1410(3).

4. Good, sufficient, appropriate and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative.

5. No objections or other responses were filed that have not been overruled, withdrawn or otherwise resolved.

6. The Chapter 15 proceeding was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

7. The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the "foreign representative" of the Debtor as such term is defined in section 101(24) of the Bankruptcy Code, and the Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

8. The Concurso Proceeding is pending in Mexico, where the Debtor's "center of main interests," as referred to in section 1517(b)(1) of the Bankruptcy Code, is located, and accordingly, the Concurso Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(l) of the Bankruptcy Code.

9. The Foreign Representative is the duly appointed foreign representative of the Debtor within the meaning of section 101(24) of the Bankruptcy Code.

10. The Foreign Representative is entitled to all the relief provided pursuant to sections 1520 and 1521(a)(5) of the Bankruptcy Code, subject to certain limited exceptions set forth below, because those protections are necessary to effectuate the purposes of Chapter 15 of the Bankruptcy Code and to protect the assets of the Debtor and the interests of the Debtor's creditors.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:

11. The Petition is granted.

12. The Concurso Proceeding is recognized as a foreign main proceeding pursuant to section 1517(a) and 1517(b)(l) of the Bankruptcy Code, and all the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply, subject to certain limited exceptions as set forth below.

13. Upon entry of this Order: pursuant to section 1520 of the Bankruptcy Code, the Concurso Proceeding shall be given its full force and effect; and, among other things (and subject to certain limited exceptions set forth below):

    (i) the protections of sections 361 and 362 of the Bankruptcy Code apply with respect to the Debtor and the property of the Debtor in the territorial jurisdiction of the United States;

    (ii) all persons and entities are enjoined from seizing, attaching and/or enforcing or executing liens or judgments against the Debtor's property in the United States; and

    (iii) all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtor or its assets that are located in the United States.

14. The Foreign Representative is hereby established as the representative of the Debtor with full authority to administer the Debtor's assets and affairs in the United States.

15. Notwithstanding the above (or the terms of any contract between the parties), each of the following providers: Flying Food Catering, Inc.; Integrated Airline Services, Inc.; Allied Aviation Fueling Company of San Antonio, Inc.; Allied Aviation Fueling Company, Inc.; Menzies Aviation (USA), Inc.; Servisair & Shell Fuel Services, LLC; Servisair USA, Inc.; and Servisair, LLC; Aircraft Service International, Inc.; and Aviation Port Services, L.L.C. (collectively, the "Providers", and each individually, a "Provider") may discontinue providing goods and/or services to Mexicana unless Mexicana complies with the following terms with respect to such Provider:

    (a)    With respect to insurance coverage, Mexicana maintains its insurance coverage and other practices regarding insurance that Mexicana followed prepetition;

    (b)    Mexicana makes payment for all postpetition goods and services rendered by such Provider so that payment is actually received by that Provider no later than seven (7) days after receipt or deemed receipt of an invoice (for postpetition goods and services rendered) that has been delivered to Mexicana after August 18, 2010;

    (c)    Invoices shall, in addition to delivery to local representatives of Mexicana (in accordance with normal practice), be sent to <u>each</u> of the individuals identified below by: electronic mail; facsimile transmission; or hand delivery or overnight delivery service addressed to both:

| | |
|---|---|
| William Heuer | Maritza Jendro |
| Duane Morris LLP | Mexicana Airlines, Accts Payable manager |
| 1540 Broadway | 9841 Airport Blvd. Ste 400. |
| New York, NY 10036-4086 | Los Angeles CA 90045 |
| wheuer@duanemorris.com | maritza.jendro@mexicana.com.mx |
| Fax: (212) 208-4521 | Fax: (310)646-0465 |

An invoice, if properly addressed, shall be deemed received by Mexicana: (i) on the date sent, if sent before 6:00 p.m. (Pacific) by electronic mail or facsimile transmission, or if sent by hand delivery and actually received by Mexicana before 6:00 p.m. (Pacific); or (ii) on the following business day if sent by overnight delivery service or if delivered in accordance with the preceding romanette but having been received after 6:00 p.m. (Pacific).

    (d)    Payments are to be made by Mexicana by wire transfer, or by check for good funds drawn on a bank which is a member of United States Federal Reserve System. If Mexicana elects to make payment by check to be sent by overnight

delivery, it will be overnight delivery for "first morning" or "earliest next day" delivery, or something similar.

(e) If Mexicana fails to make any payment within the time specified, a Provider can give Notice of Default to Mexicana. A Notice of Default shall be in writing and shall identify or enclose a copy of any invoice for postpetition goods and/or services for which a timely payment has not been timely received. A Notice of Default must include wire transfer information for the Provider in order to be effective.

(f) Notices of Default shall be sent by <u>two</u> of the following methods of delivery: electronic mail; facsimile transmission; or hand delivery or overnight delivery service, addressed to <u>each</u> of the following:

| | |
|---|---|
| William Heuer | Maritza Jendro |
| Duane Morris LLP | Mexicana Airlines, Accts Payable manager |
| 1540 Broadway | 9841 Airport Blvd. Ste 400. |
| New York, NY 10036-4086 | Los Angeles CA 90045 |
| wheuer@duanemorris.com | maritza.jendro@mexicana.com.mx |
| Fax: (212) 208-4521 | Fax: (310)646-0465 |

A Notice of Default, if properly addressed, shall be deemed received by Mexicana: (i) on the date sent, if sent before 6:00 p.m. (Pacific) by electronic mail or facsimile transmission, or if sent by hand delivery and actually received by Mexicana before 6:00 p.m. (Pacific); (ii) on the following business day if sent by overnight delivery service or if delivered in accordance with the preceding romanette but having been received after 6:00 p.m. (Pacific).

(g) If a payment is still not received by Provider by the second business day after a Notice of Default has been received or deemed received by Mexicana (by way of example if Notice of Default is sent by electronic mail and fax on a Tuesday (such that it is received before 6:00 p.m. (Pacific)) the time to cure the default expires on Thursday), Provider may discontinue providing goods and/or services to Mexicana without any further notice. If a check is received by the Provider on the second day after a Notice of Default has been received or deemed received by Mexicana, that shall constitute payment sufficient to cure the payment default. Nothing herein precludes Mexicana or any Provider from seeking other relief from the Court prior to the expiration of the time to cure a default.

(h) Notwithstanding anything herein to the contrary or the terms of any contract between the parties, if any payment by Mexicana to a Provider is not honored by Mexicana's bank, such Provider may immediately discontinue providing goods and/or services to Mexicana without any further notice or opportunity to cure.

(i) If the Debtor complies with these requirements, it has provided "sufficient protection" to the parties noted above in accordance with 11 U.S.C. § 1522(a).

16. Notwithstanding any provision of this Order to the contrary (or the terms of the contract between the parties) Airbus North America Customer Services, Inc. ("Airbus") and

Mexicana agree that Airbus may discontinue providing goods and/or services to Mexicana unless Mexicana complies with the following terms:

    (a) All orders placed by Mexicana after the date hereof will be pre-paid until such time as postpetition outstanding amounts owed to Airbus (the "Outstanding Amounts") have been paid in full. Mexicana and Airbus shall work together, in good faith, to reach agreement regarding the Outstanding Amounts.

    (b) Once such Outstanding Amounts are paid in full, Mexicana shall make payment for all postpetition goods and services rendered by Airbus in accordance with the terms of the contract between the parties.

    (c) Notwithstanding anything herein to the contrary or the terms of the contract between the parties, if any payment by Mexicana to Airbus is not honored by Mexicana's bank, Airbus may immediately discontinue providing goods and/or services to Mexicana without any further notice or opportunity to cure.

17. Nothing herein prohibits Mexicana from remitting fees and taxes, as may be required by government or agency regulations, statutes or rules, that are not property of the estate. Mexicana recognizes its obligation to comply with such requirements. Mexicana has confirmed to the Court that Mexicana recognizes and will timely fulfill all of its obligations to comply with all statutes, regulations and rules of the United States and its agencies applicable to Mexicana including, without limitation, its obligations to remit fees and taxes (that are not property of the estate), and specifically including its obligation to segregate and timely remit passenger facility charges to airports within the territorial jurisdiction of the United States and any other funds that are held in trust for the United States and any of its agencies.

18. Nothing herein shall enjoin or otherwise bar any governmental unit, as defined in 11 U.S.C. § 101(27), from (1) initiating or continuing any criminal, police or regulatory action against Mexicana to the extent permitted under 11 U.S.C. § 362(b).

19. Mexicana agrees, and the Court hereby orders, that, notwithstanding any provision of this Order to the contrary (or the terms of any contract between the parties) or the terms of a Stipulation submitted by the parties and so-ordered by the Court on November 3, 2010

[Docket No. 253] (the "Stipulation"), on consent of the parties to the Stipulation, as of November 10, 2010, to the extent each U.S.-based owner and/or operator of an airport (an "Airport Entity") has not been paid for postpetition rent and other postpetition amounts owed (the "November 10th Payment"), each such Airport Entity (on an individual basis) is granted automatically and without further order of the Court relief:

    (i) from the automatic stay, to the extent recognition as a "foreign main proceeding" is obtained by Mexicana, thereby permitting such Airport Entity to exercise any rights or remedies such Airport Entity may have or obtain respecting Mexicana including, without limitation, any right to terminate a lease or agreement (in accordance with its terms) with Mexicana and to recover any space used by Mexicana at such airport, provided, however, that to the extent the exercise of any such right or remedy requires further judicial relief, such Airport Entity shall seek such relief from this Court unless this Court orders otherwise; and

    (ii) from any injunction issued by this Court and remaining in place at such time, thereby permitting such Airport Entity to exercise any rights or remedies such Airport Entity may have or obtain respecting Mexicana including, without limitation, any right to terminate a lease or agreement (in accordance with its terms) with Mexicana and to recover any space used by Mexicana at such airport , provided, however, that to the extent the exercise of any such right or remedy requires further judicial relief, such Airport Entity shall seek such relief from this Court unless this Court orders otherwise.

***provided*, *however*,** that no Airport Entity entitled to such relief will waive or be deemed to have waived such relief by any failure to act thereon or by any decision to continue to provide goods or services to Mexicana.

    20. Mexicana further agrees, and the Court hereby orders, that notwithstanding any provision of this Order to the contrary (or the terms of the contract between the parties), each Airport Entity that continues to provide goods or services to Mexicana may submit to Mexicana invoices for postpetition rent and other postpetition amounts no more frequently than once each fourteen (14) days, and such Airport Entity may discontinue providing goods and/or services to Mexicana and is automatically granted without further order of the Court the relief from the stay

and/or injunction provided in subparagraphs 19(i) and 19(ii) hereinabove unless Mexicana complies with the following terms:

(a) With respect to insurance coverage, Mexicana maintains its insurance coverage and other practices regarding insurance that Mexicana followed prepetition;

(b) Mexicana maintains all existing security deposits and other obligations inthe nature of security deposits, to the extent such deposits and obligations existed as of August 2, 2010;

(c) Mexicana complies with all other non-monetary prerequisites and requisites for operation at the airport during all such times Mexicana operates at the airport;

(d) Mexicana makes payment for all postpetition rent and other postpetition amounts owing to such Airport Entity so that payment is actually received by that Airport Entity no later than seven (7) days after receipt or deemed receipt of an invoice therefor that has been delivered to Mexicana;

(e) Invoices shall, in addition to delivery to local representatives of Mexicana (in accordance with normal practice), be sent to <u>each</u> of the individuals identified below by: electronic mail; facsimile transmission; or hand delivery or overnight delivery service addressed to both:

| William Heuer | Maritza Jendro |
| Duane Morris LLP | Mexicana Airlines, Accts Payable manager |
| 1540 Broadway | 9841 Airport Blvd. Ste 400. |
| New York, NY 10036-4086 | Los Angeles CA 90045 |
| wheuer@duanemorris.com | maritza.jendro@mexicana.com.mx |
| Fax: (212) 208-4521 | Fax: (310)646-0465 |

An invoice, if properly addressed, shall be deemed received by Mexicana: (i) on the date sent, if sent before 6:00 p.m. (Pacific) by electronic mail or facsimile transmission, or if sent by hand delivery and actually received by Mexicana before 6:00 p.m. (Pacific); or (ii) on the following business day if sent by overnight delivery service or if delivered in accordance with the preceding romanette but having been received after 6:00 p.m. (Pacific).

(f) Payments are to be made by Mexicana by wire transfer, or by check for good funds drawn on a bank which is a member of United States Federal Reserve System. If Mexicana elects to make payment by check to be sent by overnight delivery, it will be overnight delivery for "first morning" or "earliest next day" delivery, or something similar.

(g) If Mexicana fails to make any payment within the time specified, an Airport Entity can give Notice of Default to Mexicana. A Notice of Default shall be in writing and shall identify or enclose a copy of any invoice for postpetition goods and/or services for which a timely payment has not been timely received.

A Notice of Default must include wire transfer information for the Airport Entity in order to be effective.

(h) Notices of Default shall be sent by <u>two</u> of the following methods of delivery: electronic mail; facsimile transmission; or hand delivery or overnight delivery service, addressed to <u>each</u> of the following:

| | |
|---|---|
| William Heuer | Maritza Jendro |
| Duane Morris LLP | Mexicana Airlines, Accts Payable manager |
| 1540 Broadway | 9841 Airport Blvd. Ste 400. |
| New York, NY 10036-4086 | Los Angeles CA 90045 |
| wheuer@duanemorris.com | maritza.jendro@mexicana.com.mx |
| Fax: (212) 208-4521 | Fax: (310)646-0465 |

A Notice of Default, if properly addressed, shall be deemed received by Mexicana: (i) on the date sent, if sent before 6:00 p.m. (Pacific) by electronic mail or facsimile transmission, or if sent by hand delivery and actually received by Mexicana before 6:00 p.m. (Pacific); (ii) on the following business day if sent by overnight delivery service or if delivered in accordance with the preceding romanette but having been received after 6:00 p.m. (Pacific).

(i) If a payment is still not received by the Airport Entity by the second business day after a Notice of Default has been received or deemed received by Mexicana (by way of example if Notice of Default is sent by electronic mail and fax on a Tuesday (such that it is received before 6:00 p.m. (Pacific)) the time to cure the default expires on Thursday), the Airport Entity may discontinue providing goods and/or services to Mexicana without any further notice and otherwise is granted automatically and without further order of the Court the relief provided in subparagraphs 19(i) and 19(ii) hereinabove. If a check is received by the Airport Entity on the second day after a Notice of Default has been received or deemed received by Mexicana, that shall constitute payment sufficient to cure the payment default. Nothing herein precludes Mexicana or any Airport Entity from seeking other relief from the Court prior to the expiration of the time to cure a default.

(j) Notwithstanding anything herein to the contrary or the terms of any contract between the parties, if any payment by Mexicana to an Airport Entity is not honored by Mexicana's bank, such Airport Entity may immediately discontinue providing goods and/or services to Mexicana without any further notice or opportunity to cure and shall otherwise obtain automatically and without further order of the Court the relief provided in subparagraphs 19(i) and (19(ii) hereinabove.

21. The Foreign Representative having confirmed that the Debtor intends to perform the Debtor's obligations under the Debtor's interline agreements, clearinghouse agreements and billing and settlement agreements administered by the International Air Transport Association

("IATA"), the IATA Clearing House, the Airlines Clearing House, Inc. ("ACH") and Universal Air Travel Plan, Inc. (collectively, the "Industry Agreements"), the Debtor and the Foreign Representative, as the case may be, are authorized to perform in accordance with the Industry Agreements, including without limitation (i) to honor and pay outstanding prepetition and postpetition claims arising in the ordinary course of business under the Industry Agreements, and (ii) to process customary payments and transfers and to honor customary transfer requests made by the Debtor and other participants pursuant to the Industry Agreements.

22. Other than with respect to passenger facility charges and other trust funds collected by Mexicana but which are not property of Mexicana (e.g., certain taxes collected by Mexican for the benefit of the United States of America), this injunction shall not apply to or enjoin Banco Mercantil del Norte, S.A. ("Banorte") from exercising rights and remedies against Mexicana's U.S.-based assets arising under agreements between the parties including, without limitation, (i) that certain Credit Agreement dated April 17, 2008 among Banorte, Mexicana, as an obligor, and certain non-debtor affiliates of Mexicana parties thereto (as amended from time to time, and, together with all documents, papers and instruments related thereto, the "Credit Agreement"), (ii) that certain Deposit Account Security Agreement dated June 16, 2008 among Inter National Bank ("INB"), as collateral agent, Mexicana and Aerovias Caribe, S.A. de C.V., as grantors (as amended from time to time, and, together with all documents, papers and instruments related thereto, the "Security Agreement") and (iii) that certain Collateral Agency Agreement dated June 16, 2008 between Banorte and INB (as amended from time to time, and, together with all documents, papers and instruments related thereto, the "Agency Agreement" and, together with the Credit Agreement and the Security Agreement, the "Banorte Agreements"). Consistent with this paragraph, INB shall remain subject to this Order, except to

the extent acting on instructions given to it by Banorte consistent with the Banorte Agreements. Nothing in this Order is intended to relieve any party's obligation to perform (i) that certain Agreement between U.S. Bank National Association and Mexicana dated June 12, 2002 (as amended from time to time, the "USB Agreement") and (ii) that certain Terms and Conditions for Worldwide Acceptance of the American Express Card By Airlines among Mexicana and Aerovias Caribe, S.A. de C.V., Grupo Mexicana de Aviacion, S.A. de C.V. and American Express Travel Related Services Company Inc. dated May 10, 2006 (as amended from time to time, the "Amex Agreement" and, together with the USB Agreement, the "Credit Card Funding Agreements") in accordance with their terms.

23. For the avoidance of doubt, the terms of the Stipulation and Order entered into between Banco Mercantil del Norte, S.A., and Compania Mexicana de Aviacion, S.A. de C.V., dated November 8, 2010, are hereby incorporated by reference into this Recognition Order.

24. Nothing in this Order, the Court's August 2, 2010 Order to Show Cause with Temporary Restraining Order, as amended, the Court's August 18, 2010 Preliminary Injunction Order or in Bankruptcy Code section 362, including, without limitation, any injunctions set forth herein or therein shall enjoin, prevent or limit in any manner whatsoever the parties identified on Schedule A hereto or any other parties related thereto (as relates to the assets identified on Schedule A hereto) from exercising and enforcing any of their rights and remedies with respect to the recovery of the assets identified on Schedule A hereto (hereinafter "Asset Rights and Remedies"). The protections described in paragraph 13 hereof shall apply with respect to claims in any action or proceeding involving or against the Debtor or its assets or proceeds thereof that are located in the United States to the extent that such action or proceeding seeks to determine or liquidate any claims against the Debtor, other than claims related to Asset Rights and Remedies

or orders entered by any court related to Asset Rights and Remedies. Without limiting the generality of the foregoing, this paragraph and paragraph 13 apply to the actions commenced by the parties identified in Exhibit A hereto now pending in the United States District Court for the Southern District of New York and the Supreme Court of the State of New York, County of New York, with the effect that such actions are stayed other than with respect to Asset Rights and Remedies or orders entered by any court related to Asset Rights and Remedies.

25. Nothing in this Order, the Court's August 2, 2010 Order to Show Cause with Temporary Restraining Order, as amended, the Court's August 18, 2010 Preliminary Injunction Order or in Bankruptcy Code section 362, including, without limitation, any injunctions set forth herein or therein shall enjoin, prevent or limit in any manner whatsoever C.I.T. Leasing Corporation, CIT Aerospace International and Wilmington Trust SP Services (Dublin) Limited, not in its individual capacity but solely as Trustee, and Wells Fargo Bank Northwest National Association, not in its individual capacity but solely as Owner Trustee (the "CIT Parties"), or any other parties related thereto (as relates to the assets identified on Exhibit B hereto), from exercising any of their rights or remedies with respect to the assets identified on Exhibit B hereto.

26. The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

27. The Foreign Representative, the Debtor and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

28. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

29. This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 proceeding, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Dated: New York, New York
November 8, 2010

                                         **/s/Martin Glenn**
                                                MARTIN GLENN
                                    United States Bankruptcy Judge

# SCHEDULE A

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| Airbus A319-100 | MSN 1612 | Two CF International CFM 56-5B6/3 Engines<br>ESN 575279 and 575280 | Marco Aircraft Leasing, Ltd.* |
| Airbus A319-100 | MSN 4127 | Two CF International CFM 56-5B6/3 Engines<br>ESN 699684 and 699685 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/ Lessor* |
| Airbus A319-100 | MSN 4204 | Two CF International CFM 56-5B6/3 Engines<br>ESN 699784 and 699787 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/ Lessor* |
| Airbus A319-100 | MSN 4254 | Two CF International CFM 56-5B6/3 Engines<br>ESN 699822 and 699824 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/ Lessor* |
| Airbus A320-200 | MSN 0361 | IAE V2500-A1 Engines<br>ESN V0253 and V0255 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/ Lessor* |
| Airbus A320-200 | MSN 0369 | Two International Aero Engines AG, Model V2500-A1 Engines<br>ESN V0225 and V0226 | Wells Fargo Bank Northwest, National Association, not in its individual capacity, but solely as owner trustee** |

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| Airbus A320-200 | MSN 0373 | Two International Aero Engines AG, Model V2500-A1 Engines<br>ESN V0266 and V0267 | AFT Trust-Sub I** |
| Airbus A318-100 | MSN 2328 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577134 and 577136 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2333 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577139 and 577140 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2358 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577154 and 577155 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2367 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577167 and 577168 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2377 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577174 and 577175 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2394 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577194 and 577195 | Celestial Aviation Trading 43 Limited** |
| Airbus A318-100 | MSN 2523 | Two CFM International, Model CFM56-5B8/P Engines<br>ESN 577314 and 577315 | Celestial Aviation Trading 68 Limited ** |
| Airbus A318-100 | MSN 2544 | Two CFM International, | Celestial Aviation |

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| | | Model CFM56-5B8/P Engines | Trading 68 Limited ** |
| | | ESN 577336 and 577338 | |
| Airbus A318-100 | MSN 2552 | Two CFM International, Model CFM56-5B8/P Engines | Celestial Aviation Trading 69 Limited ** |
| | | ESN 577354 and 577355 | |
| Airbus A318-100 | MSN 2575 | Two CFM International, Model CFM56-5B8/P Engines | Celestial Aviation Trading 69 Limited ** |
| | | ESN 577381 and 577382 | |
| Airbus A320-200 | MSN 3123 | Two CF International, Model CFM 56-5B3/P Engines | International Lease Finance Corporation*** |
| | | ESN 697250 and 697251 | |
| Airbus A319-100 | MSN 1866 | Two CFM International, Model CFM 56-5B6/P Engines | International Lease Finance Corporation*** |
| | | ESN 575504 and 575505 | |
| Airbus A319-100 | MSN 1872 | Two CFM International, Model CFM56-5B6/P Engines | International Lease Finance Corporation*** |
| | | ESN 575508 and 575509 | |
| Airbus A319-100 | MSN 1882 | Two CFM International, Model CFM56-5B6/P Engines | International Lease Finance Corporation*** |
| | | ESN 575516 and 575517 | |
| Airbus A319-100 | MSN 1925 | Two CFM International, Model CFM56-5B6/P Engines | International Lease Finance Corporation*** |
| | | ESN 575544 and 575545 | |
| Airbus A319-100 | MSN 2126 | Two CFM International, Model CFM56-5B6/P Engines | Calloipe Limited (Lessor) Sierra Leasing Limited (Owner)*** |

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| Airbus A319-100 | MSN 3790 | Two CF International, Model CFM 56-5B6/3 Engines<br>ESN 575741 and 575742<br>ESN 699219 and 699220 | Whitney Ireland Leasing Limited (Lessor) Wells Fargo Bank Northwest N.A. (Owner)*** |
| Airbus A319-100 | MSN 4275 | Two CF International, Model CFM 56-5B6/3 Engines<br>ESN 699855 and 699857 | Whitney Ireland Leasing Limited (Lessor) Wells Fargo Bank Northwest N.A. (Owner)*** |
| Airbus A320-231 | MSN 347 | Two IAE Model V2500-A1 Engines<br>ESN V0315 and V0240 | EAST Trust – Sub12 (Owner/Lessor)**** |

\*       Subject to Wells Fargo Bank Northwest, National Association Motion.
\*\*      Subject to GE Capital Aviation Services Objection.
\*\*\*     Subject to International Lease Finance Corporation Motion.
\*\*\*\*    Subject to EAST Trust-Sub12 Motion.

# EXHIBIT B

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| Airbus A319-112 | MSN 1598 | Two CF International, Model CFM 56-5B6/P Engines<br><br>ESN 575260 and 575261 | Wilmington Trust SP Services (Dublin) Limited, not in its individual capacity but solely as Owner Trustee/Lessor |
| Airbus A319-112 | MSN 1625 | Two CF International, Model CFM 56-5B6/P Engines<br><br>ESN 575295 and 575293 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/Lessor |
| Airbus A319-112 | MSN 2066 | Two CF International, Model CFM 56-5B6/P Engines<br><br>ESN 575676 and 575680 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/Lessor |
| Airbus A319-112 | MSN 2078 | Two CF International, Model CFM 56-5B6/P Engines<br><br>ESN 575691 and 575692 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/Lessor |
| Airbus A319-112 | MSN 2662 | Two CF International, Model CFM 56-5B6/P Engines<br><br>ESN 577471 and 577472 | Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as Owner Trustee/Lessor |
| Airbus A320-200 | MSN 3304 | Two CF International, Model CFM 56-5B4/P Engines<br><br>ESN 697495 and 697497 | Wilmington Trust SP Services (Dublin) Limited, not in its individual capacity but solely as Owner Trustee/Lessor |

| Aircraft Make/Model | Manufacturer's Serial Number | Engine Make/Model and ESN | Lessor |
|---|---|---|---|
| Airbus A330-200 | MSN 0966 | Two Rolls-Royce Trent 772B Engines<br>ESN 41571 and 41572 | CIT Aerospace International |
| Airbus A330-200 | MSN 0971 | Two Rolls-Royce Trent 772B Engines<br>ESN 41577 and 41578 | CIT Aerospace International |